**FRIGIKING, INC.**

v.

**The CENTURY TIRE & SALES CO., INC. and Samuel Rogers.**

**No. CA 3–76–0188–C.**

United States District Court,
N. D. Texas,
Dallas Division.

July 14, 1978.

---

Marvin S. Sloman and Peter Tierney, Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, Tex., for plaintiff.

Wm. Andress, Jr., Wm. Andress & Associates, Dallas, Tex., for defendants.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

Plaintiff was until February, 1976, a manufacturer and seller of automobile air conditioners and component parts for them. It sold its products to and through distributors such as Defendant, The Century Tire & Sales Company, Inc. (Century Tire, hereafter).

Plaintiff, until February, 1976, maintained its principal place of business in Dallas, Texas, which is within this District, and both Defendants, Century Tire and Samuel Rogers, are of Cincinnati, Ohio. There is also more than $10,000 in controversy so the Court finds and concludes that it does have jurisdiction of this cause [1] and that venue is proper in this District and Division.[2]

The parties have stipulated (1) that Defendant Century Tire and Defendant Samuel Rogers are jointly and severally liable to Plaintiff Washington Corporation, formerly Frigiking, Inc., in the amount of $44,358.40 for goods and merchandise sold on account and delivered by Plaintiff to Century Tire; (2) that Defendants Century Tire and Samuel Rogers are jointly and severally indebted to Plaintiff in the amount of $23,750.00 representing principal past due and owing to Plaintiff by Century Tire pursuant to an installment note dated March 27, 1975, plus interest as provided in the note.

1. 28 U.S.C. § 1332.

2. 28 U.S.C. § 1391.

Defendant Rogers is the president, principal owner and guarantor of the obligations of Century Tire owed to Frigiking.

Because of the stipulation of the parties, we are concerned with two disputes, the first being whether Plaintiff should be allowed attorneys' fees and, if so, in what amount. The second is the consequences flowing from the termination of the contractual relationship that existed between Frigiking and Century Tire, which shall be discussed first.

## I.

In 1964, Mr. Rogers executed (on behalf of Century Tire) a warehouse agreement which was accepted by an officer of Frigiking at its Dallas office.

In 1968, a Frigiking Parts Warehouse Distributor Agreement was likewise entered into. Finally, on March 10, 1972, an officer of Frigiking accepted a Frigiking Distributorship and Service Agreement[3] and a Frigiking Resident Distributorship Agreement for RV Products, both of which had been executed by a Mr. James K. Haney, Century Tire's operations manager on behalf of Century Tire.

On December 1, 1975, Frigiking announced to its employees and the public that it intended to cease operations and close its doors. The next day Frigiking formally notified its distributors of its intentions to operate its business for several months and to cooperate with them until alternate sources of supply could be found and to finally cease operations.

A few days later, Frigiking flew approximately 20 distributors to Dallas for a meeting, which Mr. Rogers attended. The distributors were told that Frigiking would manufacture products for the following market year and that it would consider extending credit terms to its distributors during the new model year.

Frigiking subsequently extended credit terms to other distributors but not to Century Tire because of the serious credit problems it was having and had had with Centu-ry Tire. Century Tire had been late on payments and had been developing a large overdue balance in its open account with Plaintiff since no later than 1974. On March 27, 1975, Mr. Rogers, on behalf of Century Tire, executed the note which is the note subject to the stipulation of the parties. This note was for the purpose of allowing Century Tire to make regular periodic payments on the amounts that had become past due and owing. By December 1, 1975, the amount past due on Century Tire's open account with Frigiking had built itself up again to approximately $36,000. Also, during various periods in 1975, Century Tire had been placed on a C.O.D. basis or on a restricted line of credit by Plaintiff.

The Credit Manager of Frigiking, a Mr. Trapp, notified Mr. Rogers in a letter dated January 6, 1976, that if payment were not forthcoming on the amounts owed by January 15, 1976, that Frigiking would "assume more determined action toward the collection of the amount due."

Century Tire's attorney sent a letter back dated January 14, 1976, claiming various offsets due because of Frigiking's discontinuance of business.

Frigiking consequently notified Century Tire in two January 23, 1976, letters that it was cancelling and terminating the above-mentioned agreements because Century had breached the agreements by not paying its past due indebtedness and noted that each agreement allowed either party to terminate the agreement upon notice. That day Frigiking filed this suit.

## II.

Century Tire makes three principal contentions as to these agreements and the purported termination in its counterclaim for various offsets.

First, that there was an oral modification of the agreements, which Century Tire relied upon to its detriment.

Second, that the provision of the four agreements that states that they may be

---

**3.** This agreement superseded an agreement entered into in 1963.

terminated at any time by either party upon notice is unconscionable and should not therefore be enforced.

Third, that it was damaged by the unlawful termination.

The Court is of the opinion that these contentions are without merit and judgment should be awarded to Plaintiff.

A contract such as the four agreements before the Court is a classic exchange of a promise for a promise. Principally, Frigiking promised to sell its products to Century Tire in return for Century Tire's promise to pay for the products it purchased from Frigiking. All other terms and conditions of the agreements are, of course, ancillary to these promises.

Clearly, Frigiking was well within its rights in cancelling the distributorship agreements because of Century Tire's chronic large overdue balances and lack of payment on the March 27, 1975, note. It could reasonably conclude, as it did, that the agreements had been breached by Century Tire, so as to impair the entire contract,[4] and therefore cancel the contracts. Cancelling is a right of a party that differs from the right to terminate[5] and does not arise out of any termination provision in a contract.[6] By cancelling the contracts under the Uniform Commercial Code, Plaintiff never had to resort to the termination procedures of the contracts. So Defendants cannot make a claim as to unlawful termination.

The oral modification that Defendants have claimed is that they were told by a representative of Frigiking that Century Tire would remain a distributor as long as it was "doing a good job." Most certainly, Century Tire was not doing a good job when it was not paying its bills. So, even if the Court were to rule that there was a valid oral modification of the agreements, which it does not, Defendants' counterclaim would fail.

## III.

Plaintiffs have requested a total attorneys' fee of $15,000. It is undisputed that the note allows for ten percent attorneys' fee in the event of a successful suit to recover under it.

Defendants have made various contentions as to why Plaintiff should not be allowed an attorneys' fee on the open account as allowed by Article 2226 of the Texas Civil Statutes Annotated. Their contentions were contingent upon the allowance of all or part of their counterclaim. As it has failed in whole, then contentions in avoidance of attorneys' fees must fail.

The Court has carefully considered Plaintiff's evidence as to the nature of the case, its difficulties, complexities, and importance, the nature of the services rendered, the amount involved, the time spent and the skill and experience reasonably needed to perform the services and finds that the evidence supports a fee in the total amount of $10,000 for services rendered in connection with both the note and the open account. The Court also concludes that an award of $10,000 as attorneys' fees would be reasonable and will therefore enter judgment in that amount as attorneys' fees.

---

4. V.T.C.A., Bus. & C., §§ 2.612 & 2.703. It does not appear that there are any variations between the Texas and Ohio versions of the U.C.C., so citations will be to the Texas version.

5. V.T.C.A., Bus. & C., § 2.106.

6. The Warehouse Agreement is slightly different in that Frigiking was to pay Century Tire for warehousing parts owned by Frigiking and for moving parts in and out of the warehouse. This agreement was substantially impaired by Defendants' removal of parts from the segregated leasehold of Frigiking without paying for them.

The letter from Frigiking to Century Tire of January 23, 1976, concerning this agreement, did say that the agreement was being terminated but the Court finds this of no moment. This agreement was ancillary to the other agreements and the purpose for it was ended when the others were cancelled. As it was ancillary and as Frigiking had ample grounds for cancelling it, the necessary conclusion is that Frigiking was within its rights to cancel it no matter that the letter so doing was couched in the terms of termination.

Plaintiff's counsel is requested to prepare and submit an appropriate form of judgment.