CAMFIELD TIRES, INC., Appellant,

v.

MICHELIN TIRE CORPORATION,
Appellee.

No. 82–1808.

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1983.

Decided Oct. 28, 1983.

Hugh R. Kincaid, Kincaid, Horne & Trumbo, Fayetteville, Ark., James M. Micali, Asst. Gen. Counsel, Michelin Tire Corp., Lake Success, N.Y., for appellee.

William M. Cromwell, Rose, Kinsey & Cromwell, Fort Smith, Ark., for appellant.

Before BRIGHT and JOHN R. GIBSON, Circuit Judges, and HANSON,* District Judge.

JOHN R. GIBSON, Circuit Judge.

This case presents the troublesome issue of whether summary judgment may be granted when one of the parties after giving a deposition later files an affidavit with directly contrary statements. The question arises in an action filed by Camfield Tires, Inc., against Michelin Tire Corporation, which cancelled Camfield as a dealer. In Count I of its claim Camfield alleges that Michelin wrongfully terminated the dealership contract. In Count II Camfield alleges tortious interference with a business relationship. The district court[1] granted summary judgment for Michelin on both counts. Camfield claims that Michelin is not entitled to summary judgment because there is a conflict in the evidence that requires determination by a finder of fact. We affirm the grant of summary judgment.

After Camfield's appeal was filed, we requested further briefing on the particular issue arising from the conflict between the deposition testimony of Glen E. "Pete" Camfield, the operating head of his corporation, and the affidavit he later filed.

Under the contract between Camfield and Michelin, Camfield was to make payment to Michelin in accordance with the terms of the invoices. Payment for all shipments made to Camfield on or before the 15th day of each calendar month were due on or before the 10th day of the following calendar month. Payment for all shipments made after the 15th day of each calendar month were due on or before the 10th day of the second calendar month. In January 1980 Camfield was past due in its account in the sum of $9,359.98 on invoices dating back as far as September 1979. The district court observed in its order that more than half this amount was ninety days past due.

The contract provided that "[s]ubmission of any negotiable instrument by Dealer shall not constitute payment until Michelin has collected the full amount thereof." On January 22, 1980, Camfield gave Michelin Sales Representative Wayne Busse a check, postdated February 15, 1980, in the amount of $9,359.98. Michelin attempted to have the check certified by Camfield's bank in Springdale on February 15, 1980, but the bank refused. Michelin then deposited the

---

* The Honorable William C. Hanson, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable William Ray Overton, United States District Judge for the Eastern District of Arkansas.

check for collection through normal banking channels and it was dishonored twice.

Pete Camfield in his deposition testified about Michelin's handling of the check:

They had a check from me, and they had been asked when I gave them the check to not deposit it until a certain date—I believe those instructions they followed.

Camfield Deposition at 27.

In his deposition Camfield also testified:

I'm not asking—I'm not saying that they deposited the check before they were supposed to. I'm not saying that. For no more time than there was, that is not of importance. I feel like the district manager did what I requested . . . .

Camfield Deposition at 43.

A year later, Pete Camfield filed an affidavit in which he recited:

That sometime in January of 1980, I delivered a check to Wayne Bussey [sic] which was dated for February 15th, 1980. This check was drawn on CAMFIELD TIRES, INC. and was made payable to MICHELIN TIRE CORPORATION and was in the sum of $9,359.98.

This check was given with specific instructions to Mr. Bussey [sic] to return the check to my place of business on February 15th, 1980 for payment in full. Further, the check was delivered with specific instructions not to attempt presentation of the check to the First National Bank of Springdale, Arkansas. Funds for payment of this check were located in a separate account and were to be supplied to Mr. Bussey [sic] upon presentation on February 15th, 1980.

However, Mr. Bussey [sic] never returned with the check and never presented the check for payment to CAMFIELD TIRES, INC., as per instructions. Rather, contrary to the instructions, the check was presented to the First National Bank of Springdale, Arkansas and was dishonored. If the check had been presented in accordance with the instructions, the check would have been paid on February 15th, 1980.

Camfield Affidavit at 1. At the same time, Camfield submitted the affidavit of his secretary to corroborate this version of the facts.

On April 23, 1980, Michelin cancelled the dealership agreement with Camfield. Camfield alleges that such cancellation violated the contract provision that permitted Michelin to terminate the agreement upon 120 days written notice and after the first anniversary date of the agreement, which would have been December 6, 1980. The district court observed that the account was still unpaid when the contract was cancelled and that more than half of the $9,000 account was over 180 days past due. It concluded that Michelin was justified under the circumstances in cancelling the agreement and that this right of cancellation existed separately from the 120-day notice provision in the contract. In granting summary judgment on both counts, the district court found that Pete Camfield's affidavit was "plainly implausible" and contrary to his sworn deposition testimony.

## I.

Camfield contends that the district court erred in granting summary judgment for Michelin on Count I, wrongful cancellation, because a genuine issue of fact existed as to whether Michelin was justified in cancelling. Specifically, Camfield argues that the finder of fact should have been permitted to decide if the Michelin salesman followed Camfield's instructions in depositing the postdated check. At issue is whether Camfield instructed the salesman simply to delay the deposit, as Pete Camfield's deposition testimony indicates, or whether Camfield told the salesman not to deposit the check and to bring it back to him directly, as his affidavit later states.

■■■■ Under Fed.R.Civ.P. 56(c), we may only sustain the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Scherr Construction Co. v. Greater Huron Development Corp.,* 700 F.2d 463, 465 (8th Cir.1983). This court recognizes the drastic nature of the summary judgment remedy, finding it appropriate only if "the moving party has established his right to a judgment with such clarity as to leave no room for controversy and the non-moving party is not entitled to recover under any discernible circumstances." *Butler v. MFA Life Ins. Co.,* 591 F.2d 448, 451 (8th Cir.1979). All evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Jackson v. Star Sprinkler Corp. of Fla.,* 575 F.2d 1223, 1226 (8th Cir.1978).

We must decide whether the conflict between Pete Camfield's affidavit and his earlier deposition testimony creates a genuine issue as to any material fact, thus precluding the entry of summary judgment for defendant under Rule 56. The circuits have reached differing results concerning the propriety of summary judgment in such circumstances. In *Radobenko v. Automated Equipment Corp.,* 520 F.2d 540 (9th Cir. 1975), the Ninth Circuit concluded that an issue of fact that arose from a conflict between a party's deposition and later affidavit was not a genuine issue but a sham. The court relied upon *Perma Research & Development Co. v. The Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969), in which the Second Circuit reasoned that allowing a party to submit a contradictory affidavit after giving a deposition would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. The Fifth Circuit reached a contrary result in *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 893 (5th Cir.1980). After carefully examining Rule 56 and cases decided under it, the court there concluded that a genuine issue can be raised by a party's affidavit even if it conflicts with the party's earlier deposition testimony.

Despite reaching a different conclusion, the *Kennett-Murray* court did not disagree with the central concern of the *Radobenko* and *Perma Research* courts that parties not thwart the purpose of Rule 56 by generating issues of fact through affidavits that contradict their own depositions. It described certain narrow circumstances under which a party's contradictory affidavit can raise a legitimate factual issue:

> [T]he alleged inconsistency created by the affidavit existed within the deposition itself. Accordingly, the issue ... was appropriately raised by the deposition even without consideration of the affidavit.
>
> Even assuming that the deposition was unequivocal, Bone's affidavit served to create a genuine issue which would preclude summary judgment. Bone's affidavit did not purport to raise a new matter, but rather to explain certain aspects of his deposition testimony. Bone stated that he was confused during the deposition.... Bone's assertion is at least plausible. A fair reading of the deposition reveals frequent shifts in the questioning ... with a degree of confusion on the parts of both Bone and the attorney.
>
> The affidavit is not inherently inconsistent with Bone's earlier testimony.... Furthermore, the statement in the affidavit is not at odds with Bone's general theory of defense presented in the deposition.

622 F.2d at 894–95. Because the limited facts in *Kennett-Murray* suggested that the party did not file an inconsistent affidavit for the purpose of circumventing Rule 56, the court did not find it necessary to decide whether the principles of *Radobenko* and *Perma Research* should be adopted.

Absent narrow circumstances such as those in *Kennett-Murray,* courts confronting the issue we face here have followed the *Radobenko* and *Perma Research* cases. In *Office Supply Co. v. Basic/Four Corp.,* 538 F.Supp. 776, 785–86 (E.D.Wis.1982), the plaintiff was cross-examined at length on the subject during the earlier deposition, could not complain of lack of access to material facts and did not put forth newly discovered evidence in the later affidavit. In *Letson v. Liberty Mutual Ins. Co.,* 523 F.Supp. 1221, 1230 (N.D.Ga.1981), the defendant's affidavit was inherently inconsist-

ent with his prior deposition, the deposition did not reflect confusion, and the affidavit assertion was not plausible. These courts concluded that the contradictory affidavits did not preclude summary judgment.

Upon careful examination of the record as a whole, we discern no circumstances such as those in *Kennett-Murray*. Unlike the affidavit in *Kennett-Murray,* Camfield's affidavit does not explain aspects of his deposition testimony, nor does the deposition reflect any confusion on Camfield's part that might require explanation. By filing an inconsistent affidavit, Camfield created issues concerning his instructions regarding the check and concerning his own credibility. The issues Camfield thereby injected, however, were not genuine because the circumstances in this case do not suggest legitimate reasons for Camfield's filing of the inconsistent affidavit.

Camfield nonetheless claims that his deposition raises the issue as to whether Michelin deposited the check against Pete Camfield's instructions to bring the check directly to him. Camfield specifically points out language in the deposition reflecting those instructions:

Q. (By Mr. Kincaid) Well, I think—were you aware that your check had not cleared the bank?

A. (By Mr. Camfield) I was aware of it and at the very same time I was aware of it, *I asked the salesman to bring the check by and I would make it good.*

Camfield Deposition at 42–43, quoted in Supplemental Brief of Appellant at 5 (emphasis supplied). A fair reading of Camfield's deposition, however, suggests that he asked the salesman to bring the check to him only *after* the check had been dishonored. Thus, no internal inconsistency such as that in the *Kennett-Murray* deposition exists in Camfield's deposition.

Camfield further argues that the facts set forth in his affidavit were corroborated by the affidavit of his secretary. Both affidavits were filed by Camfield expressly for the purpose of opposing summary judgment, a year after he gave his deposition

testimony. Neither Camfield's affidavit nor that of his secretary raises the possibility that confusion or mistake such as that present in *Kennett-Murray* caused the discrepancy with Camfield's deposition.

Since the narrow exception recognized by the *Kennett-Murray* court is inapplicable here, we follow the rationale of the *Radobenko* and *Perma Research* courts. The very purpose of summary judgment under Rule 56 is to prevent "the assertion of unfounded claims or the interposition of specious denials or sham defenses...." 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2712 (1983). If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. *Perma Research, supra,* 410 F.2d at 578, *quoted in Radobenko, supra,* 520 F.2d at 544. No circumstances such as those in *Kennett-Murray*—e.g., confusion or mistake—explain why Camfield and his secretary directly contradicted his own deposition. The district court, in stating that the assertions in the affidavit were "not only implausible but also contrary to Camfield's sworn testimony in his deposition," reached a conclusion as to the existence of a genuine issue of fact. We do not read this conclusion as a credibility determination but rather as a recognition of a sham issue similar to those that the *Perma Research* and *Radobenko* courts held should not require trial. Since Camfield's affidavit created a sham issue of fact instead of a genuine one, we conclude that the district court did not err in granting Michelin summary judgment.

■ We emphasize that the strong remedy of summary judgment is to be reserved for those cases in which there is no genuine material issue of fact for determination. It is a procedure that is of great value in eliminating the sham and frivolous case. If testimony under oath, however, can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment. A

party should not be allowed to create issues of credibility by contradicting his own earlier testimony. The district courts should examine such issues with extreme care, and only in circumstances such as this where the conflicts between the deposition and affidavit raise only sham issues should summary judgment be granted. Under these circumstances it is incumbent upon the district court to articulate with care its reasons in resolving such conflicts. The conclusions enunciated by the district court are sufficient to withstand what we consider to be the careful scrutiny required in these circumstances.

## II.

▉ We also conclude that Camfield's affidavit did not raise an issue of *material fact*. The dealership agreement explicitly provided that "[s]ubmission of any negotiable instrument by Dealer shall not constitute payment until Michelin has collected the full amount thereof." Regardless of Pete Camfield's instructions as to the check, Michelin had not been paid in accordance with the dealership agreement. It was therefore justified in cancelling under N.Y. U.C.C. § 2–703(f) (McKinney 1964).[2]

In its order granting Michelin summary judgment, the district court drew upon the holding in *Frigiking, Inc. v. Century Tire & Sales Co.*, 452 F.Supp. 935 (N.D.Tex.1978). In *Frigiking*, the court found that under the Texas version of Section 2–703, Frigiking was justified in cancelling a distributorship agreement because of Century Tire's chronic large overdue balances and lack of payment on a note. *Id.* at 938. We agree that *Frigiking* is directly on point here. Camfield, the district court found from the record, was chronically in debt to Michelin and "substantially in breach of the dealership agreement as early as January of 1980." When Michelin cancelled in April of

1980, the account remained unpaid, more than half of it over 180 days.

Camfield argues that *Frigiking* does not apply to this case because its agreement with Michelin did not allow Michelin to terminate the contract until after the first anniversary date of the contract and upon 120 days written notice. Camfield further argues that under U.C.C. § 1–102(3) which permits parties to vary by agreement provisions of the U.C.C., the contract's termination provision supersedes Michelin's power to cancel under Section 2–703. We disagree. The U.C.C. explicitly draws a distinction between "termination" and "cancellation."

> "Termination" occurs when either party pursuant to a power created by agreement or law puts an end to the contract *otherwise than for its breach. . . .* "Cancellation" occurs when either party puts an end to the contract for breach by the other and its effect is the same as that of "termination" except that the cancelling party also retains any remedy for breach of the whole contract or any unperformed balance.

N.Y.U.C.C. § 2–106 (McKinney 1964) (emphasis supplied). Thus, the contract's limitation applies only to the "termination" remedy, not to a party's right to cancel for breach by the other party.

Camfield also suggests that Michelin, in accepting Camfield's postdated check, agreed to a method of payment other than that originally prescribed by Michelin. Nothing in Michelin's behavior, though, indicates that it considered Camfield to have discharged its debt through issuance of the check. The contract itself provided that a negotiable instrument does not constitute payment until the full amount is collected, and this provision could be varied only by an instrument in writing by the parties. Thus, even if Michelin had agreed to a

2. The dealership agreement stipulates that New York law governs its construction. Here it makes no difference because the relevant Arkansas U.C.C. provisions are identical to those of New York. Section 2–703(f) of the New York U.C.C. states: "Where the buyer wrong-

fully . . . fails to make a payment due on or before delivery . . . and, if the breach is of the whole contract (Section 2–612), then also with respect to the whole undelivered balance, the aggrieved seller may . . . (f) cancel."

modified payment schedule, the check did not constitute payment.

We conclude that Michelin was justified in cancelling the dealership agreement under N.Y.U.C.C. § 2–703(f) (McKinney 1964) because of Camfield's serious and chronic failure to meet its payment requirements. Whatever Camfield's instructions to the Michelin salesman concerning the check, the check itself did not constitute payment. Hence the issue raised by Pete Camfield's contradictory affidavit was not material, and summary judgment on Count I was properly entered.

### III.

 Camfield contends that the district court should not have granted Michelin summary judgment on Count II, in which Camfield alleges that Michelin tortiously interfered in its business relationship with Willis Shaw Frozen Express. In its order, the district court found that the affidavit of Ed Hubble, Vice President of Willis Shaw Frozen Express, stated facts that rendered Camfield's allegations baseless. For example, Hubble's affidavit established that Willis Shaw Frozen Express began buying from dealers other than Camfield because of price advantages. In contrast, the district court found that Pete Camfield's affidavit was not a statement of facts within his personal knowledge, which is required under Fed.R.Civ.P. 56(e). The court quoted language from Camfield's affidavit:

> On September 20th, 1977, I informed Mr. Hubble that I would meet the dealer's commission discounts as being offered by other Michelin dealers. This offer fell on deaf ears and indicated to me that price was not the determining factor in Mr. Hubble's decision to shop elsewhere.

Memorandum Order at 4, quoting Camfield Affidavit. The court concluded: "This 'indication' to Mr. Camfield that price was not a determining factor is a mere surmise on his part, not a fact of which he has knowledge which would support his tort claim against Michelin."

We agree with the district court's evaluation of Camfield's assertions as "inferences,

opinions and surmises." Under Rule 56(e), an affidavit filed in support of or opposition to a summary judgment motion must be based upon the personal knowledge of the affiant; information and belief is insufficient. *Londrigan v. Federal Bureau of Investigation,* 670 F.2d 1164, 1174 (D.C.Cir. 1981); *McSpadden v. Mullins,* 456 F.2d 428, 430 (8th Cir.1972). Because the affidavit does not allege facts within Camfield's personal knowledge, we conclude that the district court did not err in granting summary judgment for Michelin on Count II.

Accordingly, we affirm the judgment of the district court.