Murray BURNETT, et al., Plaintiffs,

v.

MONTGOMERY WARD & COMPANY, INC., et al., Defendants.

No. 87–0219–CV–W–JWO.

United States District Court, W.D. Missouri, W.D.

Feb. 9, 1988.

Alex M. Lewandowski and Janet Blauvelt, Dysart, Taylor, Pener, & Lay, P.C., Kansas City, Mo., for plaintiffs.

Michael Arnold, Yonke, Arnold & Newbold, Michael D. Gordon, Jolley, Walsh, Hager & Gordon, Kansas City, Mo., and Patrick J. Riley, Washington, D.C., for Intern. Broth. of Teamsters, Chauffers, Warehousemen and Helpers of America, Local 41.

Jack L. Whitacre, Spencer, Fane, Britt & Browne, Kansas City, Mo., for Montgomery Ward & Co., Inc.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, Senior District Judge.

This case pends on defendants' motions for summary judgment.[1] Defendants contend that plaintiffs' cause of action is time barred under the six-month statute of limitations for hybrid Section 301/fair representation litigation adopted in *DelCostello v. Teamster's*, 462 U.S. 151, 155, 103 S.Ct. 2281, 2285, 76 L.Ed.2d 476 (1983).[2] Plain-

---

1. On September 16, 1987 this Court entered an order directing the parties to confer and submit a proposed order outlining the procedures under which the defendants' statute of limitations defense should be presented before the Court. On September 24, 1987, this Court signed a proposed order filed by the parties setting forth such procedures. Pursuant to that order the parties filed a stipulation of facts on November 12, 1987. Defendant Montgomery Ward, pursuant to the above-noted order, then filed its motion for summary judgment on December 5, 1987. Defendant Local 41 and defendant International Union subsequently filed their supplemental motions for summary judgment on December 16, 1987 and December 19, 1987, respectively.

2. Defendant International Union alleges additional grounds in support of its supplemental motion for summary judgment. Since we find and conclude plaintiffs' complaint is time barred, we need not rule on those grounds.

tiffs oppose defendants' motions for summary judgment contending that the "evidence supports a finding that genuine issues as to material facts exist regarding the issues of the running of the limitation period." For the reasons stated below, defendants' motions for summary judgment will be granted.

## I

### A.

The Court is grateful for the stipulation of facts and exhibits incorporated and attached thereto filed by the parties. The stipulation of the parties is attached hereto as Appendix A and incorporated by this reference as part of our findings of fact. In addition, the parties substantially rely on deposition testimony in support of their respective positions on the statute of limitations issue. This Court, pursuant to Rule 56(c), Fed.R.Civ.P., will make additional findings of fact in reliance on such testimony.[3]

### B.

Plaintiffs allege in Count I of their amended complaint[4] that defendant Montgomery Ward breached the collective bargaining agreement entered into between the parties by laying off all plaintiffs and subcontracting all of plaintiffs' work to a wholly-owned subsidiary of Montgomery Ward, American Delivery Service (ADS). In Counts II and III, plaintiffs allege defendants Teamsters Local Union 41 and International Brotherhood of Teamsters failed to fairly represent plaintiffs by refusing to pursue plaintiffs' grievances in compliance with the grievance procedures in the collective bargaining agreement.

The parties agree that a six-month limitation period applies to both the contract claim and the unfair representation claim

asserted in plaintiffs' complaint. *DelCostello*, 462 U.S. at 164–65, 103 S.Ct. at 2290–91; *Gustafson v. Cornelius Company*, 724 F.2d 75, 79 (8th Cir.1983). The parties cannot, however, agree on the date when plaintiffs' cause of action accrued. Nor do the parties agree on what legal standard this Court should apply in determining when plaintiffs' cause of action accrued.

Defendants contended in their original suggestions that plaintiffs' cause of action accrued when plaintiffs "knew or should have known" of the union's alleged breach of its duty of fair representation. *See* Montgomery Ward's Motion for Summary Judgment Brief at 4 (citing *King v. New York Telephone Co.*, 785 F.2d 31, 34 (2d Cir.1986); *Douty v. Pioneer Rural Elec. Co-op, Inc.*, 770 F.2d 52, 56 (6th Cir.1985); *see also* Local 41's Motion for Summary Judgment Brief at 1 and cases cited therein. Plaintiffs contend, however, that defendants "do not correctly cite the test that has been adopted in the Eighth Circuit for accrual of a cause of action under Section 301." We agree.

In the Eighth Circuit, an employee's cause of action against the union accrues when the union commits the acts of unfair representation.[5] *Craft v. Local Union 618*, 754 F.2d 800, 803 (8th Cir.1985) (employee's claim accrued on the date the employee's grievance was finally rejected and his contractual remedies were exhausted); *Gustafson*, 724 F.2d at 79 (action against union accrued when union decided not to pursue grievance); *Butler v. Local Union 823*, 514 F.2d 442, 449 (8th Cir.1975) (action against union could not have accrued "until union engaged in acts of unfair representation in the grievance process"). Under the circumstances of this case, however, resolution of this apparent conflict in tests set forth by the parties is not dispositive. For

---

**3.** Plaintiffs also submitted affidavits in support of their suggestions in opposition to the motion for summary judgment. For the reasons fully stated in part III, our findings of fact were not made in reliance on such affidavits.

**4.** Plaintiffs filed their original complaint on March 10, 1987 and their amended complaint on September 1, 1987.

**5.** Although defendants initially fail to set forth the Eighth Circuit rule, they subsequently cite and rely on the Eighth Circuit test in support of their motion for summary judgment.

the reasons we now set forth, we find and conclude that plaintiffs' cause of action accrued under either test no later than August 1, 1986 and thus is time barred.

## II

■ Defendants contend "that plaintiffs knew or should have known in June 1986, and certainly no later than August 1, 1986 ... that Local 41 would take no further action on any grievances that give rise to this action." Thus defendants contend the plaintiffs' cause of action filed on March 10, 1987 is barred by the six-month statute of limitations. We agree.

The evidence before the Court overwhelmingly demonstrates that plaintiffs' cause of action accrued no later than August 1, 1986. The stipulated facts indicate that by mid-March, 1986 plaintiff Burnett, was informed by Jim Bailey, a Local 41 business representative, that the two grievances filed by Charles Adams in February and March, 1986 were deadlocked.[6] In May or June, 1986, plaintiff Burnett, then union steward, was informed that the two grievances filed by Charles Adams were not going to arbitration because representatives of the "Teamsters were dropping it." Stip. ¶ 13.

On August 1, 1986, plaintiff Burnett filed unfair labor practice charges with the NLRB on behalf of all the Wardfleet drivers against Montgomery Ward and Local 41. Stip. ¶ 17; Stip. Exh.R. Burnett set forth in his NLRB claim the "sum and substance" of the two grievances filed by Charles Adams and attached thereto copies of such grievances.[7] Burnett expressly states in his NLRB claim that "[c]laimant has been advised that the two grievances have reached a 'deadlock' and no other action will be taken on those grievances."[8] Burnett further states that:

**6.** The substance of those two grievances constitute the basis of plaintiffs' cause of action before this Court. *See* Burnett Dep. at 104–05.

**7.** Plaintiff Burnett testified in his deposition that the matters alleged in the NLRB charge were also the same as those raised in this litigation. Burnett Dep. at 104–05.

the employer has committed an unfair labor practice and a violation of its contract as required by law and more particularly as required by 29 U.S.C. § 158; and that Teamsters Local 41 has committed unfair labor practice and has willfully failed to represent claimant and other similarly situated employees by refusing to proceed to a final determination on the two grievances and to live up to the terms of the contract.

In a subsequent affidavit presented by Burnett to the NLRB on August 7, 1986 Burnett stated that "he talked to Local 41 Business Agent Bailey in mid-May 1986, after the Step 3 grievance procedure deadlocked on March 11, 1986, and

> I asked what the Union was planning to do about the grievances. He [Bailey] said there would not be an arbitration.... He said he had recently spoken to Teamsters International Vice–President Yeager and Yeager said that the matter had been dropped and they were done with it....

> *        *        *        *        *        *

> In filing the charge in case 17–CB–3261 against the Union, I am alleging that the Union failed to fairly represent the bargaining unit employees by refusing to take the two grievances to arbitration in violation of Section 8(b)(1)(A) of the Act."

Stip. Exh. 5.

The stipulation of facts, NLRB charge, and subsequent affidavit filed by Burnett conclusively establish that by June, 1986 the union had refused to pursue the grievances which form the basis of this litigation. Moreover, the August 1, 1987 NLRB charge and subsequent affidavit filed on behalf of the plaintiffs clearly establishes that plaintiffs knew or should have known of the union's refusal on the date of the filing.

**8.** Formal requests to arbitrate the grievances deadlocked on March 11, 1986 were never filed. Stip. ¶ 13. Under the terms of the collective bargaining agreement the union could have filed a written request within 10 days.

Our reliance on the NLRB charge, in addition to the above-noted stipulated facts, is consistent with the Eighth Circuit's decision in *Gustafson v. Cornelius Company,* 724 F.2d 75 (8th Cir.1983). In *Gustafson* the Eighth Circuit held that an employee's cause of action in a hybrid Section 301/fair representation suit accrued "when the union decided not to pursue the [employee's] grievance." 724 F.2d at 79. The date the union decided not to pursue the employee's grievance, however, was unclear from the record. The court resolved the ambiguity by taking judicial notice of the unfair labor practice charge filed by the employee and the date therein on which the employee charged the union decided not to pursue his grievance. *Id.* at 79.

The Eighth Circuit concluded that the date set forth in the NLRB charge was the date the employee's cause of action accrued. *Id.* In the alternative, the court noted the appellant's cause of action could be found to have accrued at the latest on the filing of the unfair labor practice charge. *Id.* n. 10. Under either date the plaintiffs' claims were time barred.

Similarly, we find and conclude that the NLRB charge filed on August 1, 1986 on behalf of all the plaintiffs conclusively establishes the latest date plaintiffs' cause of action accrued. Plaintiffs' cause of action filed on March 10, 1987 is therefore time barred.

### III

Plaintiffs, however, contend that "other evidence is available" which precludes the court "from finding as a matter of law that the union rejected the grievances or that the Plaintiffs knew or should have known in June of 1986 or in August of 1986 that the Union would take no further action." The "other evidence" which plaintiffs substantially rely on are the affidavits of plaintiffs Charles Adams, John David Bough, Emery Cox, Meredith Montgomery, and Murray Burnett filed by the plaintiffs in support of their suggestions in opposition.

The affidavits, however, contradict both earlier deposition testimony given by the above-named plaintiffs and the specific allegations set forth in NLRB charge in which all the above-named plaintiffs were joined.[9] Moreover, the affidavits fail to explain the contradictions in the affidavits or state any reason why any confusion may have been created by the deposition testimony.

Defendants contend that plaintiffs "cannot defeat a motion for summary judgment by submitting affidavits which directly contradict, without explanation of the contradiction, their previous deposition testimony." We agree.

The Eighth Circuit addressed this precise issue in *Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361 (8th Cir.1983). The Eighth Circuit held that an affidavit inherently inconsistent with the prior deposition testimony of the party submitting the affidavit and containing no explanation for the contradiction or clarification of the disparity fails to create a genuine issue of fact. *Id.* at 1365. Thus, the Court concluded in *Camfield* that the issues injected by the affidavit were not genuine because "the circumstances in this case do not suggest legitimate reasons for (plaintiffs) filing of the inconsistent affidavit." *Id.* at 1365. Accordingly, the court found that "[s]ince (plaintiffs) created a sham issue of fact instead of a genuine one," the district court did not err in granting summary judgment. *Id.*

The Eighth Circuit in *Camfield* directed district courts to "examine such issues with extreme care, and only in circumstances such as this where the conflicts between the depositions and affidavit raise only sham issues should summary judgment be granted. Under these circumstances it is incumbent upon the district court to articulate with care its reasons in resolving such conflicts." *Id.* at 1366.

This Court, consistent with the Eighth Circuit's directions in *Camfield,* will now set forth in detail the following reasons in

---

9. The names of the above-named plaintiffs were attached to Burnett's NLRB charge filed on be-

half of the Wardfleet drivers on August 1, 1986.

support of our conclusion that plaintiffs' affidavits merely inject sham issues which do not preclude entry of summary judgment.

### A.

Plaintiff Burnett in his affidavit now asserts that after June, 1986 he had several further conversations with Jim Bailey where Jim Bailey stated the union was going to pursue the grievances.[10] Burnett's deposition testimony, however, reveals the following:

Q. How weren't they [the Union] truthful?

A. Because in March they said they were going to go to an arbitrator. In June they said they aren't going to go to an arbitrator.

Q. And Jim Bailey never explained to you why they weren't going to go to an arbitrator?

A. Not that I recall. He said, "it's over with, we are done, that's it".

Burnett Dep. at 110–11. Burnett also testified that:

Q. Did he [Bailey] tell you that Yeager had decided the grievance wouldn't be taken to arbitration, that the Teamsters were dropping it?

A. Yes, he did.

Q. Would that have been approximately May of 1986?

A. Probably, because it was in there about May or June that he said that it wasn't going to go to an arbitrat[or].

Q. And, in fact, is when you learned whenever it was, in May or early June of '86, that it wasn't going to go to an arbitrator the reason was that either Yeager or Peters had decided that it wouldn't be taken to arbitration, correct?

A. Jim stated that Jack Yeager told him that we were done with it, so—

Q. And you were referring in this conversation to the subcontracting grievances against Ward?

A. Yes, the two—

Q. Two grievances that had been deadlocked in March?

A. Right.

Burnett Dep. at 117–18.

Burnett's testimony makes it abundantly clear that the Union unequivocally rejected the two grievances at issue in the litigation and that Burnett had knowledge of such refusal. Moreover, any suggestion of confusion asserted by Burnett's affidavit must be rejected by the demonstrated actions of Burnett in filing the NLRB charge in August of 1986 on behalf of the Wardfleet drivers. Burnett's affidavit makes no attempt to explain the above-noted contradictions with his deposition testimony. Accordingly, we find and conclude Burnett's affidavit fails to set forth a genuine issue of material fact.

### B.

Plaintiff Adams in his affidavit now asserts that subsequent to June of 1986, Adams spoke with Jim Bailey several times concerning the two grievances he filed and received conflicting reports concerning the status of the grievances. Adams, however, testified at his deposition to the following:

Q. Well at the time [August of 1986] that he [Burnett] filed those unfair labor practice charges were you of the opinion that Local 41 wasn't going to do anything more on behalf of your grievance?

A. Yes, I was.

Adams Dep. at 152.

This statement, in addition to the NLRB charge filed on behalf of Charles Adams and other Wardfleet drivers which unequivocally sets forth the Union's position in regard to the grievances Adams filed clearly contradicts the assertions in Adams' affidavit. Adams sets forth no explanation in

---

**10.** The affidavit, however, does not specify whether the conversations were before or after August 1, 1986. Nor did the affidavit specify which grievances Jim Bailey assured the plaintiff the union would pursue. *See Babrocky v.* *Jewel Food Co. & Retail Meatcutters,* 773 F.2d 857, 862 (7th Cir.1985) (the affidavit "must include specific facts to establish genuine issue of material facts exists" (citing *Posey v. Skyline Corp.,* 702 F.2d 102, 106 (7th Cir.1983))).

his affidavit for the contradiction nor asserts any confusion surrounding his testimony at the deposition. Accordingly, we find and conclude that Adams' affidavit injects only sham issues in regard to the statute of limitations question.[11]

### C.

Plaintiff Cox in his affidavit now asserts "[i]n September of 1986 Meredith Montgomery and I talked to Jim Bailey. Mr. Bailey told us the grievances were still in arbitration." Cox, however, testified during his deposition to the following:

Q. At some point in time, you learned, didn't you, that the grievance or grievances were not only deadlocked but they were dead, they just weren't going anywhere else?

A. That's what we understood.

Q. And when did you come to understand that?

A. I don't know the day or time, but somewhere in this period of time—

Q. That the period of time you are talking about is the summer of '86?

A. Yes.

Q. You came to know sometime during the summer of '86 that these grievances were not going anywhere?

A. Summer or fall, seemed to me like it was late summer.

Q. Okay. August or September?

A. Possibly. I don't know.

Q. Okay. At that point in time, it became clear to you or you came to know that whatever the status of the grievances, they were not going to go any further?

A. That was my understanding.

Cox Dep. at 130–31.

Cox's affidavit sets forth no explanation as to why he now asserts that in September of 1986 he understood the grievances were "still in arbitration." We therefore find and conclude Cox's affidavit must be disregarded for it fails to raise anything more than a sham issue.[12]

### D.

Plaintiffs Bough and Montgomery filed affidavits which also assert that after the filing of the NLRB charge they were informed by Jim Bailey that the "grievances were still in arbitration."[13] The affidavits fail to explain, however, why the parties' failed to remember such conversations with Jim Bailey when specifically asked for such information in their depositions. *See* Bough Dep. at 98–99; Montgomery Dep. at 16–18, 31–32. Moreover, Bough and Montgomery filed grievances in late August and early September respectively. Their conclusory affidavit statements fail to set forth whether their conversations with Mr. Bailey were pertinent to the two grievances

---

11. Adams also asserts in his affidavit that he "spoke with Mr. John Couts, the President of Local 41, on two occasions about these grievances. In the summer and in the early fall of 1986 I was told by John Couts that he would see that Local 41 pursued the grievances, and that he would instruct Jim Bailey to arbitrate the grievances."

Adams' deposition testimony in regard to his knowledge of the Union's position in August of 1986, however, contradicts this assertion. Moreover, Adams was questioned at his deposition in regard to his conversations with John Couts. Adams Dep. at 122. Adams failed to mention the conversations set forth in his affidavit although provided with the opportunity to do so. We therefore find Adams' assertion also fails to raise a genuine issue in regard to the statute of limitations defense.

12. Cox, as did all the plaintiffs filing affidavits, states in his affidavit that "I never received any

written notification that the grievances were deadlocked or that they would not be pursued by the Union prior to the filing of this lawsuit." The defendants do not dispute this assertion. They contend that "[w]ritten notice, however, is not required before the limitations period begins to run." We agree. *See, e.g., Pickart v. Purex Corporation,* No. 87–5274 (8th Cir. Nov. 4, 1987); *see also* this Court's discussion of the above rule in *Burnett v. International Union, United Auto. & Agr. Implement Workers of America,* 628 F.Supp. 20, 22 (W.D.Mo.1985).

13. Plaintiff Bough's affidavit states "I spoke with Jim Bailey just after Murray Burnett filed the NLRB charge and was told by Bailey that we were being premature; that the grievances were still in arbitration."

Plaintiff Montgomery's affidavit states: "In September of 1986 Emery Cox and I talked to Jim Bailey. Mr. Bailey told us the grievances were still in arbitration."

filed by plaintiff Adams or their own grievances. Finally, the above-noted affidavits make no attempt to explain the contradictory statements in the NLRB charge filed in August of 1986 on behalf of plaintiffs Bough and Montgomery.

In summary, we find and conclude plaintiffs Bough and Montgomery's affidavits, like the other affidavits, fail to raise a genuine issue of material fact in regard to the statute of limitations question.

### IV

 Plaintiffs also contend in their opposition brief that under the doctrine of equitable tolling, the six-month statute of limitations period in this case was tolled. Specifically, the plaintiffs contend that they "relied on the assurances they received from the president and business agent of Local 41 that the union was pursuing the grievances and that procedures were available to be pursued. Plaintiffs' reliance on those representations by the union are sufficient to toll the statute of limitations, and certainly preclude summary judgment for Local 41 and Montgomery Ward." We disagree.

In support of their equitable tolling argument plaintiffs rely on the above noted affidavits. For the reasons fully set forth in part III, we find and conclude that the affidavits raise only sham issues and are not dispositive of plaintiff's equitable tolling argument.

Plaintiffs, however, also rely on a letter issued by Jim Bailey, union business agent, on October 6, 1986 to support their argument that they relied on "assurances" from the union that it was pursuing the grievances. Mr. Bailey's letter simply requests "the arbitration of certain unspecified deadlocked grievances." Stip. ¶ 25. The letter makes no specific reference to the two grievances filed by Charles Adams which constitute the basis of plaintiffs cause of action before this Court. Moreover, the letter was issued over two months

after Burnett on behalf of the plaintiffs, filed his NLRB claim against Local 41.

In light of the above-noted facts and the stipulated facts and deposition testimony set forth in parts II and III of this decision, plaintiffs' argument that they relied on "assurances" from Local 41 representatives, specifically Mr. Bailey's October 6, 1986 letter, is not persuasive. We therefore find and conclude that plaintiffs' equitable tolling argument is untenable.[14]

### V

In summary, we find and conclude that plaintiffs' cause of action, which accrued no later than August 1, 1986, is time barred. We further find and conclude that neither the affidavits plaintiffs filed nor the doctrine of equitable tolling preclude this Court from entering summary judgment in favor of the defendants.

Accordingly, it is

ORDERED that defendants' motion for summary judgment should be and the same is hereby granted.

---

**14.** Plaintiffs, cite *Hill v. Georgia Power Company,* 786 F.2d 1071 (11th Cir.1986), and contend the "facts in *Hill* are analogous to the instant situation" and thus support their equitable tolling contention. We find and conclude, however, that *Hill* is not dispositive. For the facts in this case are clearly distinguishable from those in *Hill.*