Artice DOTSON, Plaintiff,

v.

**UNITED STATES POSTAL SERVICE,
and Anthony M. Frank, Postmaster
General, Defendants.**

No. 89–CV–73131–DT.

United States District Court,
E.D. Michigan, S.D.

Jan. 11, 1991.

Lawrence Katkowsky, Southfield, Mich., for plaintiff.

Denise Langford–Morris, Asst. U.S. Atty., Detroit, Mich., David Wightman, U.S. Postal Service, Chicago, Ill., for defendants.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

HACKETT, District Judge.

Defendants United States Postal Service (USPS) and Postmaster General Anthony M. Frank have filed a motion for summary judgment in this employment discrimination suit.

FACTS

Plaintiff Artice Dotson served as a part-time flexible (PTF) mail carrier at the United States postal facility in Wayne, Michigan, from November 24, 1986, until September 19, 1988. He alleges in the first amended complaint that defendants terminated his employment based upon his physical handicap. Defendants deny those allegations and assert that plaintiff's misrepresentations on his application for postal employment preclude any recovery in this suit.

Plaintiff filed his original postal employment application (form 2591) on October 8, 1986. In response to the form's question about past work experience, plaintiff omitted information about his previous employment with both the Michigan State Department of Corrections at the Western Wayne Correctional Facility (WWCF) and as a worker at an A & P warehouse in Detroit, Michigan. In fact, however, plaintiff had temporary employment at WWCF from approximately May 7, 1986, through July 28, 1986, and at the A & P warehouse from late August, 1986, through early November, 1986.

On October 31, 1986, plaintiff completed defendants' pre-employment medical form 2485, and indicated that he was not taking any prescribed medicine. Defendants contend that during an interview on that same day, plaintiff told Postmaster Lloyd Wesley (Wesley) of the Wayne postal facility that his previous back problems had diminished, no longer caused him pain, and he had no physical impairment that would interfere with the performance of his duties as a PTF mail carrier. On November 24, 1986, he stated on a postal service employment affidavit (form 61) that, since filing for employment with USPS, he had not been discharged from a job, nor resigned under the threat of termination. He began his employment as a PTF carrier on that same day.

On August 18, 1988, defendants terminated plaintiff from his employment, effective September 18, 1988. Defendants took this action based on plaintiff's previous back injuries and physical condition that limited his ability to carry mail. Plaintiff commenced administrative proceedings with the Equal Employment Opportunity Commission, which determined that no discrimination based on race or handicap had occurred.[1] Plaintiff then initiated this suit, alleging in the first amended complaint that defendants' termination of plaintiff constituted discrimination against the handicapped and violated the Rehabilitation Act, 29 U.S.C. § 791 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16.

In support of this motion for summary judgment, defendants claim that in the course of discovery they learned for the first time that plaintiff had worked at WWCF and at the A & P warehouse shortly before beginning his postal employment, and had omitted that information from his employment application. Furthermore, defendants allege that plaintiff was fired from both those positions, or resigned because the threat of a firing loomed over him. Defendants aver that plaintiff was insubordinate at WWCF, became embroiled in a dispute with his supervisor, and walked off the job shouting, "You can take this fucking job and shove it!" They further contend that the A & P warehouse fired plaintiff for leaving work without the permission of a supervisor.

Defendants also claim to have learned only during discovery that plaintiff had visited a Veterans' Administration clinic on October 23, 1986, to complain of recurring back pain that dated from an injury plaintiff sustained while serving in the United

---

**1.** Plaintiff's amended complaint contains no allegations of racial discrimination.

States Coast Guard. Plaintiff allegedly received a prescription for a pain reliever during that appointment, which he needed because his earlier prescription for Indocin was ineffective. Defendants further state that three days after plaintiff's visit to the Veterans' Administration clinic, he sought additional treatment from Dr. Dean due to pain and tingling in his back and legs that related to an automobile accident in March, 1986.

Based upon these allegations, defendants contend that plaintiff lied about his physical condition during his interview with Wesley, misrepresented his medical history and his need for prescription drugs, and falsified his appointment affidavit by stating that since filing for employment with USPS he had never been fired or left a job under threat of a discharge. They further allege that plaintiff's omissions and misrepresentations indicate that he is dishonest, and that Wesley would never have hired a dishonest person to work as a PTF carrier at the Wayne facility. Plaintiff, therefore, is allegedly not qualified for the job and deserves no relief in this action.

In response to this motion, plaintiff submits his affidavit stating that he did not list his employment with WWCF and the A & P warehouse on his postal application because he "believed that such temporary employment did not count toward solid work experience." At his deposition, plaintiff testified that he misunderstood the postal application's question about past employment, so that he innocently failed to list his employment at WWCF and the A & P warehouse. Plaintiff further explains that he was not fired from his position at the A & P warehouse. He alleges that he simply walked off the job when he received an emergency telephone call and was unable to locate a supervisor who could grant him permission to go home. Plaintiff says he never returned to the A & P warehouse because he presumed that all involved understood he had quit his job by leaving work without a superior's authorization.

As to his medication, plaintiff claims he did not acknowledge it on the postal forms because the prescription was for use "as needed," and he was not taking it at the time of his application.

Plaintiff further contends that summary judgment may not enter because genuine issues of material fact are in dispute. He argues that he can establish a prima facie case of handicap discrimination and that he did not intentionally misrepresent information on his employment application. Any misinformation on the application allegedly resulted from innocent errors.

## ANALYSIS

### A.

Federal Rule of Civil Procedure 56(c) provides that a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The Rule promotes the expedient administration of justice and protects the parties' rights. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corporation v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1); *Cloverdale Equipment Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989). The courts construe Rule 56 "with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact ... but also for the rights of persons opposing such claims and defenses." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

A party moving for summary judgment bears a considerable burden. The Court of Appeals for the Sixth Circuit has held that a

District Court may grant a motion for summary judgment only if it finds from the whole record before it that there are no material facts which are in dispute.

It may not make findings of disputed facts on a motion for summary judgment. The movant has the burden of showing conclusively that there exists no genuine issue as to a material fact and that the evidence together with all inferences to be drawn therefrom must be considered in the light most favorable to the party opposing the motion. The movant's papers are to be closely scrutinized while those of the opponent are to be viewed indulgently.

*Watkins v. Northwestern Ohio Tractor Pullers Assn.,* 630 F.2d 1155, 1158 (6th Cir.1980) (citations omitted); *see also, Ghandi v. Police Dept. of the City of Detroit,* 747 F.2d 338 (6th Cir.1984), *cert. denied, sub nom., Ghandi v. Fayed,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988).

This does not mean, however, that courts should hesitate to enter summary judgment where it is appropriate to do so. In 1986, the Supreme Court's opinions in *Celotex, supra, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202, and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538, revitalized Rule 56 and spawned a "new era" that "reflect[s] a salutary return to the original purpose of summary judgments." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476 (6th Cir.1989). While a court must still deny a motion for summary judgment where the facts in an action are in dispute, since *Celotex, Anderson,* and *Matsushita* an opponent to such a motion may no longer defeat it simply by suggesting that facts are in controversy. *Id.*

Before a court may enter summary judgment, it must determine that no genuine issue of material fact is in dispute. In *Anderson* the Supreme Court directly addressed the question of what constitutes a genuine issue of material fact by holding that irrelevant and unnecessary facts should have no bearing on a trial court's determinations on a motion for summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat [a] properly supported motion for summary judgment."

*Id.,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original). Accordingly, only germane facts that go to the heart of the parties' suit deserve consideration. The courts will not entertain metaphysical doubts as material facts to defeat the motion. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356.

Furthermore, a court presented with a motion for summary judgment must perform "the threshold inquiry of determining whether there is the need for a trial." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. The court must ask whether there are genuine factual issues that might reasonably be decided in favor of either party, so that only a finder of fact could properly resolve them. *Id.; Street,* 886 F.2d at 1477. An affirmative response to that inquiry requires the court to deny the motion for summary judgment. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial,'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (citing *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)), and summary judgment is appropriate.

The court further notes that if the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law, then the opposing party assumes the burden to come forward with "specific facts showing that there is a genuine issue for trial." *Cities Service,* 391 U.S. at 270, 88 S.Ct. at 1583. Mere allegations or denials in the non-movant's pleadings will not meet this burden.

### B.

The court must analyze plaintiff's employment discrimination claims under the standards established by the Supreme Court in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1989). *Harris v. Adams,* 873 F.2d 929, 932 (6th Cir.1989).

For purposes of handicap discrimination, the *Burdine* test requires that

(1) [t]he plaintiff must establish a prima facie case by showing that he was an otherwise qualified handicapped person *apart from* his handicap, and he was rejected under circumstances which gave rise to the inference that his rejection was based solely on his handicap; (2) Once plaintiff establishes his prima facie case, defendants have the burden of going forward and proving that plaintiff was not an otherwise qualified handicapped person, that is one who is able to meet all of the program's requirements *in spite of* his handicap, or that his rejection from the program was for reasons other than his handicap.

*Harris*, 873 F.2d at 932 (emphasis in original) (citing *Jasany v. United States Postal Service*, 755 F.2d 1244, 1249 n. 5 (6th Cir. 1985)).

Defendants claim that plaintiff was never qualified for his position because honesty and truthfulness are employment prerequisites for PTF mail carriers. In support of that contention, defendants have submitted Wesley's affidavit, which states

[h]ad I become aware before I hired Dotson that Dotson was or had been working for the Michigan Department of Corrections in 1986 and had omitted this fact from his answer to Box 11 of the PS Form 2591 employment application he signed on October 8, 1986, I would not have hired Dotson because that omission demonstrates that he is untruthful and I expect all of my employees to be honest. Similarly, had I become aware of this fact while Dotson was working for the Wayne/Westland Post Office I would have fired Dotson.

The affidavit further states that Wesley would have taken the same action had he known about plaintiff's employment at the A & P warehouse, and

[h]ad I become aware before I hired Dotson that Dotson had been fired from the A & P warehouse in 1986 and had not even listed such employment on his employment application, I would not have hired Dotson because it demonstrates

that he is untruthful and I expect all of our employees to be honest.

Plaintiff contends that even though defendants may require honesty and truthfulness of PTF carriers, his application contained no deliberate misrepresentations; any omission or false statement was the result of plaintiff's mistake or misunderstanding of the application. He further argues that even if defendants intended to dismiss him from his position for dishonesty, they may not raise that issue in support of a motion for summary judgment because defendants had no knowledge of those errors or misrepresentations at the time of plaintiff's firing. To substantiate this argument, plaintiff submits his affidavit stating he did not intend to mislead defendants about his past; he voluntarily left his positions at WWCF and the A & P warehouse; he believed that temporary employment at WWCF and the A & P warehouse should not be included in the application; and, he did not mention his medications because they were to be taken "as needed" and he was not using them at the time of the application.

Plaintiff's affidavit, however, is inconsistent with his deposition testimony. As to his termination from work at the A & P warehouse, plaintiff testified as follows:

Q: During the time you worked for the A & P warehouse, did you ever have any kind of disciplinary action—

A: No. I guess I wasn't there long enough. I received a call one night that my sister and her daughter had been in an automobile accident so I requested a leave from my position to go see what was happening and they never got back with me so I just left. Then when I returned back to work, I was given a pink slip.

Q: When you came back the next day?

A: Yes.

Q: A pink slip meaning?

A: I was fired.

Q: You were fired?

A: Yes.

Q: Did you try to explain the reason why you left?

A: Yes.

Q: What happened?

A: I was told I didn't get the authorization to leave. I explained I tried and I waited approximately 30 minutes because the guy was in the office. I couldn't wait any longer.

Q: How did they respond?

A: They said, "Well, next time, you'll wait."

Q: Do you know who it was that fired you?

A: The same guy.

Q: That Mr. Dean?

A: Yes.

This testimony clearly is contrary to plaintiff's statements in his affidavit and reveals that plaintiff considered himself fired from the A & P warehouse job. Plaintiff stated that Mr. Dean fired him and he received a pink slip. He testified, "I was fired."

■ While the court must view all facts in the light most favorable to plaintiff in analyzing this motion for summary judgment, plaintiff "may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition." *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir.1986) (citing *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir.1984)). While an inconsistent affidavit may preclude summary judgment if the affiant was confused during the deposition, the affidavit must clearly explain why the deponent was confused. *Miller v. A.H. Robins Co., Inc.*, 766 F.2d 1102, 1104 (7th Cir.1985) (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1364–65 (8th Cir.1983); *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 893–95 (5th Cir. 1980)).

■ In the instant matter, plaintiff's affidavit contains nothing to explain its inconsistency with his deposition testimony. The court, therefore, must give credence to the deposition and conclude, based upon plaintiff's own admissions, that the A & P warehouse supervisor fired plaintiff. This establishes that plaintiff made an omission on his employment application when he stated he had not been discharged from a job during the time that his postal application was pending.

Accordingly, plaintiff was not otherwise qualified for the position of PTF mail carrier. Defendants would not have offered plaintiff employment had they known of his omission of the A & P warehouse job and his failure to inform them of his firing. Under the *Burdine* standards, plaintiff is not entitled to relief because he lacked the honesty and truthfulness that defendants required of postal employees.

When defendants dismissed plaintiff from his PTF carrier position, they did not know that he had omitted the A & P warehouse job and dismissal from his employment application. They obtained that information only during discovery in this litigation. Defendants' ignorance of that incident at the time of discharge, however, does not entitle plaintiff to relief, even if defendants *might* have fired plaintiff based on a handicap. Plaintiff's omission of previous employment information disqualified him for the postal position. He cannot seek recovery for discrimination when he was not initially entitled to the job. As the Tenth Circuit has stated,

[t]he present case is akin to the hypothetical wherein a company doctor is fired because of his age, race, religion, and sex and the company, in defending a civil rights action, thereafter discovers that the discharged employee was not a 'doctor.' In our view, the masquerading doctor would be entitled to no relief.

*Summers v. State Farm Mutual Automobile Insurance Co.*, 864 F.2d 700, 708 (10th Cir.1988).

■ In support of their motion for summary judgment, defendants argue that plaintiff lacked the honesty required of a PTF mail carrier. To refute that allegation, plaintiff submits his affidavit stating he did not intend to mislead USPS and he voluntarily left his employment at the A & P warehouse. That affidavit, however, is in direct conflict with plaintiff's deposition testimony, which unambiguously stated he received a pink slip from the A & P warehouse and had been fired by Mr. Dean.

Plaintiff, therefore, has mislead the court by opposing a motion for summary judgment with two conflicting statements, each made under oath. One of the statements must be false and the court is left with a record replete with inconsistencies as it analyzes plaintiff's arguments. The record does not support plaintiff's position, and at the least, he has not overcome defendants' motion for summary judgment.

Any misunderstanding by plaintiff about the postal forms' questions relative to his physical condition, medical history, use of prescription drugs, or previous employment, are irrelevant in light of plaintiff's misrepresentations to this court. A reasonable jury could only find that plaintiff omitted the A & P warehouse incident from his postal application and tried to explain it by a sworn affidavit in conflict with his sworn deposition. Under such circumstances, plaintiff cannot establish a prima facie case of handicap discrimination and cannot withstand defendants' motion for summary judgment. Accordingly,

IT IS ORDERED that defendants' motion for summary judgment hereby is GRANTED.