William E. WILSON, Appellant,

v.

WESTINGHOUSE ELECTRIC CORPORATION, Appellee.

No. 86–2498.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1987.

Decided Feb. 1, 1988.

Michael Minton, St. Louis, Mo., for appellee.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

ARNOLD, Circuit Judge.

William Wilson appeals from the District Court's order granting summary judgment to defendant Westinghouse Electric Corporation in Wilson's action under the Age Discrimination in Employment Act (ADEA), as well as under the Missouri law of contract and fraud. We agree with the District Court that Wilson's claims relating to his initial termination are time-barred, and that Wilson has failed to raise a genuine issue of fact from which a jury might reasonably conclude that the 180–day statutory limitations period was tolled. We hold, however, that the District Court erroneously dismissed on jurisdictional grounds Wilson's alternate action under the ADEA for Westinghouse's failure to rehire him, and we remand for further proceedings on this theory. Finally, we affirm the District Court's summary judgment for Westinghouse on Wilson's pendent state-law claims.

I.

Wilson was hired to direct scheduling at Westinghouse's St. Louis Transformer Service Center in January 1978, when he was 51 years old. Wilson remained at his job until 1982, when Westinghouse directed him to train a younger employee to perform the scheduling in St. Louis. On June 30, 1982, Westinghouse sent Wilson a letter informing him that his employment had been terminated and that Westinghouse would provide him with separation allowance of one-half salary for nine months beginning in August 1982. On June 28, 1983, Wilson filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that Westinghouse had unlawfully terminated because of his age.

H. Kent Munson, St. Louis, Mo., for appellant.

The District Court awarded summary judgment for Westinghouse on Wilson's

termination claim on the ground that Wilson filed his initial EEOC charge after the 180–day limitations period provided by the ADEA, 29 U.S.C. § 626(d)(1), had expired. On appeal, Wilson argues that the limitations period began to run, not with his June 30, 1982, termination letter, but with the expiration of his severance benefits on April 30, 1983, which would have made the filing of his EEOC charge two months later timely. We cannot accept Wilson's proposed alternative termination date. In *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the Supreme Court rejected a Title VII plaintiff's attempt to establish his final day of employment as the effective date of the "unlawful employment practice," holding instead that the 180–day limitations period commences when the plaintiff receives notice of a termination decision. For present purposes, the limitations provisions for employment-discrimination actions under Title VII and the ADEA are identical, and we are bound to apply the rule in *Ricks* to the present case. When Westinghouse terminated Wilson, its letter gave him clear notice of its decision well over 180 days before Wilson filed his initial EEOC charge. We do not agree with Wilson's contention that the letter was ambiguous.

■ Wilson's stronger argument against Westinghouse's limitations defense accepts the June 30, 1982, termination date for purposes of the statute, and claims instead that Westinghouse's conduct justifies the equitable tolling of the limitations period. Wilson asserts on appeal that he understood only that his position in St. Louis was being eliminated, and that Westinghouse had consistently promised him that a new position within the company would be found.

Prior to Westinghouse's motion for summary judgment on its limitations defense, Wilson's testimony at deposition was that

[His supervisor] said [Wilson] was being terminated. He did not say the job was being eliminated. Its not possible to eliminate scheduling in a manufacturing plant.

Wilson Deposition at 188–89, quoted in Brief for Appellee at 15. When asked why he believed that Westinghouse had lulled him into a false sense of security after his termination, Wilson responded:

Everyone I talked to said, you know, everyone is doing everything they can do to find a position for me.

Wilson Deposition (2d) at 30–32, quoted in Appellee's Brief at 12. Wilson's earlier statements at deposition appear to be fatal to his equitable tolling claim, since he had admitted that he knew he was being terminated at the time of his dismissal—not merely reassigned from an eliminated job position. The attempts of Wilson's supervisors to locate a new position for Wilson within the company do not, without more, establish the requisite conditions for equitable tolling. See *Kriegesmann v. Barry–Wehmiller Co.*, 739 F.2d 357, 359 (8th Cir.), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984). In order to justify tolling the statute, Wilson must show either "... a deliberate design by the employer or ... actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Id.* (citation omitted.) As a matter of law, nothing that Wilson testified to in his initial depositions satisfies these criteria.

After Westinghouse filed its motion for summary judgment on its limitations defense, Wilson submitted an affidavit which alleged a much stronger version of the facts. In this subsequent affidavit, Wilson claims that

... on or about June 30, 1982, [Wilson] was informed ... that his position at St. Louis Transformer Service Center was being eliminated but that [Wilson] would remain on the active rolls of [the company] and that his employment with the company would continue ... until such time as a new position within [the company] could be found for him.

Wilson Affidavit p. 2, Joint Appendix at 76. On this new version of the facts, Wilson would have considered himself an employee undergoing reassignment to some undetermined new position, so that he would

have had no idea at the time that his termination letter meant what it said.

■ The difficulty is that the conclusory allegations in Wilson's affidavit directly contradict his prior sworn depositions. In particular, Wilson's affidavit constitutes an about-face on the crucial question of whether his supervisor told him that he was being terminated on June 30, 1982. The critical implication created by Wilson's revised testimony—that he believed that his employment with Westinghouse would continue at a reduced salary indefinitely during his reassignment—is supported by no other evidence in the record, and flies in the face of Wilson's admission that he had applied to over fifty prospective employers in the months after he received his termination letter. Joint Appendix at 57–62.

■ While district courts must exercise extreme care not to take genuine issues of fact away from juries, "(a) party should not be allowed to create issues of credibility by contradicting his own earlier testimony." *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365–66 (8th Cir.1983). Ambiguities and even conflicts in a deponent's testimony are generally matters for the jury to sort out, but a district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before. Otherwise, any party could head off a summary judgment motion by supplanting previous depositions *ad hoc* with a new affidavit, and no case would ever be appropriate for summary judgment. *Id.* at 1365. On the facts of this case, we agree with the District Court that Wilson's revised account of his termination did not create a genuine issue of fact on which a jury could reasonably find that the limitations period was tolled, and so we affirm its summary judgment for Westinghouse on Wilson's termination claim. It is unnecessary to decide whether Wilson's revised version of the facts, if accepted, would amount to the kind of affirmative misconduct necessary to create equitable tolling under the rule of *Kriegesmann v. Barry–Wehmiller Co., supra.*

## II.

■ Wilson also appeals the District Court's dismissal of his second ADEA claim, which alleges that Westinghouse unlawfully refused to rehire him because of his age and in retaliation for his previous EEOC charge. Wilson's initial charge, filed on June 28, 1983, concerned only Westinghouse's decision to terminate him. On March 23, 1984, Wilson filed a second EEOC charge which articulated a separate ground involving Westinghouse's failure to rehire him. On April 30, 1984, Wilson filed his original complaint in the District Court, which included a count stemming from his failure-to-rehire charge. Because Wilson commenced his action less than 60 days after he filed his second EEOC charge, the District Court dismissed Wilson's failure-to-rehire claim on the ground that it lacked subject-matter jurisdiction under the ADEA, 29 U.S.C. § 626(d).

Wilson concedes that the ADEA imposes a 60–day waiting period after the filing of an EEOC charge as a prerequisite to federal jurisdiction. He argues, however, that he cured the jurisdictional defect by filing a supplemental complaint after the required 60 days had elapsed, restating his failure-to-rehire claim. The trial court rejected Wilson's attempt to cure the jurisdictional defect, holding that his supplemental pleading relates back to the date of his original complaint under Fed.R.Civ.P. 15(c). (The District Court did say, though, that Wilson could refile his failure-to-rehire claim later, in a separate suit.) On appeal, Wilson objects that the District Court distorted the remedial purpose of the relation-back doctrine by enforcing this rule against a curative pleading.

We agree. In effect, this approach to Rule 15(c) turns Wilson's premature inclusion of his rehire claim into a irretrievable mistake that bars jurisdiction for the duration of this lawsuit. This is precisely the kind of procedural mousetrap that the Federal Rules were designed to dismantle. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that

the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

 While the District Court was clearly unable to exercise jurisdiction over Wilson's rehire claim upon the filing of his original complaint, the expiration of the 60–day waiting period was exactly the kind of event occurring after filing that Wilson should have been allowed to set forth in a supplementary pleading under Fed.R.Civ.P. 15(d). Even when the District Court lacks jurisdiction over a claim at the time of its original filing, a supplemental complaint may cure the defect by alleging the subsequent fact which eliminates the jurisdictional bar. See *Mathews v. Diaz,* 426 U.S. 67, 75, 96 S.Ct. 1883, 1889, 48 L.Ed.2d 478 (1976).

Westinghouse argues that the relation-back doctrine codified in Fed.R.Civ.P. 15(c) fixes the time of Wilson's supplemental complaint at the date of his premature original pleading, a result which would permanently freeze Wilson's claim at a moment when the District Court lacked jurisdiction. We cannot accept this hypertechnical interpretation of Rule 15(c). The doctrine of relation back serves the remedial purpose of protecting claims raised in amended pleadings from the statute of limitations. To this extent, Wilson's additional ADEA claim relates back to the date of the original filing, in the sense that Westinghouse cannot now raise a statute-of-limitations defense, since the claim clearly arises out of the same conduct set forth in Wilson's orig-

inal complaint. At the same time, "... we are not required to apply the doctrine of relation-back so literally as to carry it to a time within [the requisite waiting period] so as to prevent the maintenance of the action in the first place." *Security Ins. Co. of New Haven v. U.S. for Use of Haydis,* 338 F.2d 444, 449 (9th Cir.1964). See also Wright & Miller, *Federal Practice and Procedure* §§ 1496, 1508.[1]

 In order to avoid penalizing the plaintiff, the District Court granted Wilson leave to file a new complaint asserting his rehire claim upon the dismissal of his suit. Although this disposition would protect Wilson from a *res judicata* defense, this order might not protect such a new complaint, filed over three years after the cause of action accrued, from a summary limitations defense under 29 U.S.C. § 626(e)(1).[2] In any case, suspension of proceedings pending the satisfaction of a jurisdictional prerequisite is preferable to dismissal with leave to refile, which would serve no purpose other than the creation of an additional procedural technicality. *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 765 n. 13, 99 S.Ct. 2066, 2076, n. 13, 60 L.Ed.2d 609 (1979). We therefore reverse the District Court's dismissal of Wilson's rehire claim, and remand for further proceedings. We are mindful of defendant's contention that the purpose of the 60–day waiting period is to give Westinghouse and the EEOC a chance to settle the charge by conciliation. In theory, an atmosphere conducive to conciliation, is spoiled by the filing of a lawsuit. The pendency of a com-

---

**1.** In dismissing Wilson's rehire claim for want of jurisdiction, the District Court relied on *Reynolds v. United States,* 748 F.2d 291 (5th Cir. 1984). In *Reynolds,* the plaintiff sued the United States under the Federal Tort Claims Act, without written notice of the denial of her claim by the appropriate administrative agency, and before she had waited the designated six-month period in lieu of such notice under 28 U.S.C. §§ 2401(b) and 2675(a). The Fifth Circuit held that her supplementary complaint alleging the subsequent expiration of the six-month period related back to her original pleading, and so dismissed her suit for want of jurisdiction.

In reaching this result, the Fifth Circuit took pains to emphasize that "[w]aivers of sovereign immunity must be strictly construed." 748 F.2d

at 292 (citing *Gregory v. Mitchell,* 634 F.2d 199 (5th Cir.1981)). Since the case before us does not involve the thorny problem of whether the sovereign has consented to be sued, we are not bound to construe pleading rules as strictly as the Court did in *Reynolds.*

**2.** If the District Court lacks jurisdiction over Wilson's present suit, it may also lack jurisdiction to approve in advance his tolling argument against a limitations defense in his future action renewing his complaint. See *Vance v. Whirlpool Corp.,* 716 F.2d 1010, 1013–14 (4th Cir. 1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 and 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 873 (1984) (Widener, J., dissenting).

plaint, however, especially one clearly premature on its face, would not stop a defendant who really wanted to settle from doing so. If some reduction in the likelihood of settlement occurred, we think it more fair to tolerate this reduction, rather than extinguishing a possibly meritorious claim on the basis of a technical defect which has been cured by the mere lapse of time.

## III.

Finally, Wilson appeals the District Court's summary judgment for Westinghouse on his claims for breach of contract and fraud. Wilson presents a promissory estoppel theory under Missouri law, claiming that Westinghouse employees had induced him to accept the position in St. Louis with promises of rapid advancement and permanent employment. On appeal, Wilson points to testimony concerning vague and general assurances that Wilson would be advanced "as quickly as possible," and (later) that Westinghouse employees would attempt to locate a new position for Wilson at other Westinghouse plants.

The alleged oral agreements were to be performed in the indefinite future, and are generally unenforceable under Missouri's Statute of Frauds, § 432.010 et seq. R.S.Mo. (1978). Although plaintiffs may sometimes avoid unjust results under the Statute of Frauds by proving promissory estoppel, this doctrine requires proof of a definite promise, as concrete as one found in an ordinary written contract. See *Mayer v. King Cola Mid–America*, 660 S.W.2d 746, 749 (Mo.App.1983). The District Court concluded that the assurances of Westinghouse employees as to promotion and relocation were simply too indefinite to establish a promissory estoppel claim which would overcome the general bar imposed by Missouri's Statute of Frauds. We accord great deference to the District Court's application of the law of the state in which it sits, and we have no adequate reason to reject its judgment for Westinghouse on Wilson's contract claims.

Wilson brings three different fraud theories. Wilson claims (1) that in discussing his pension rights before hiring, a Westinghouse employee led Wilson to believe that he would remain with the company until retirement, (2) that Westinghouse falsely told Wilson that he was training a younger replacement for the purpose of making Wilson available for reassignment, and (3) that Westinghouse told Wilson his job was "permanent," rather than "temporary." Each of these claims essentially translates Wilson's contractual claim that he was promised employment until retirement into the language of tort. The District Court found that there was no evidence that any of these communications could have established a sufficiently concrete expectation of guaranteed employment upon which Wilson could have reasonably relied. For essentially the same reasons involved in Wilson's contract claim, we affirm the District Court's summary judgment for Westinghouse on his fraud theories.

## IV.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion on the claim that Westinghouse failed to rehire Wilson because of his age or in retaliation for his having filed an EEOC claim contesting his initial termination.

It is so ordered.