Herbert F. **CAUDILL**, Plaintiff,

v.

**FARMLAND INDUSTRIES, INC.,** Defendant.

No. 86–1014–CV–W–9.

United States District Court, W.D. Missouri, W.D.

Oct. 31, 1988.

---

Dennis E. Egan, Bert S. Braud, Popham Conway Sweeny Fremont & Bundschu, Kansas City, Mo., for plaintiff.

Stephen P. Dees, Kansas City, Mo., for defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNT I

BARTLETT, District Judge.

Defendant Farmland Industries, Inc. has filed a motion for partial summary judgment asserting that: 1) all claims asserted under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.* are barred by the statute of limitations; 2) the claim for retaliation under the ADEA should be dismissed because Farmland was not plaintiff's "employer" when the alleged unlawful employment practice occurred; and 3) the claim for retaliation under the ADEA should be dismissed because plaintiff filed his complaint less than 60 days after he filed his administrative charge.

### Standard for Summary Judgment

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed. 2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litiga-

tion and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). *See also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* 106 S.Ct. at 2511. The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 2512.

### A. September 7, 1984, Discriminatory Discharge Claim

Defendant Farmland Industries, Inc. in its motion for summary judgment moves that plaintiff's claim that he was unlawfully discharged on September 7, 1984, be dismissed because plaintiff's charge filed with the Equal Employment Opportunity Commission (EEOC) on May 2, 1985, was untimely filed.

Initially, as a jurisdictional matter, no civil action may be commenced in federal court under ADEA unless a charge alleging unlawful discrimination has been filed with the EEOC. 29 U.S.C. § 626(d). The record presented to me does not contain a charge filed with the EEOC protesting a termination on September 7, 1984, or any other date close to September 7, 1984. The charge filed with the EEOC on May 2, 1985, complains about a failure to hire, not a discharge. Plaintiff's statement in paragraph eight of his complaint that "the date of plaintiff's discharge stated in said charge is incorrect; and should be September 7, 1984, and not August 22, 1984," does not make the May 2, 1985, charge something different from what it was.

Because plaintiff never filed a charge with the EEOC alleging an unlawful discharge on September 7, 1984, or on August 22, 1984, plaintiff's claim in his complaint that he was unlawfully discharged on September 7, 1984, will be dismissed for failing to comply with 29 U.S.C. § 626(d).

Even if I were to assume that the charge filed with the EEOC on May 2, 1985, refers to plaintiff's claim that he was unlawfully discharged on September 7, 1984, plaintiff's claim is barred because the May 2, 1985, charge was not timely filed.

The time within which an administrative charge must be filed is:

1) within 180 days after the alleged unlawful practice occurred; or 2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred or within 30 days after receipt by the individual of notice of termination of proceedings under state law, whichever is earlier.

29 U.S.C. § 626(d).

Section 633(b) applies when "an alleged unlawful practice occur[s] in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice. . . ." Section 633(b) is "intended to screen from federal courts those discrimination complaints that might be settled in the satisfaction of the grievant in state proceedings." *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979).

The May 2, 1985, charge was untimely under § 626(d) because May 2, 1985 is more than 180 days after September 7, 1984. Therefore, plaintiff argues that because Missouri prohibits discrimination in employment on the basis of age, *see* Mo.Rev.Stat. § 213.055, the ADEA's 300 day limitations period applies.

At the time of the alleged unlawful employment practice (September 7, 1984), as well as at the time plaintiff filed the EEOC charge (May 2, 1985), Missouri did not prohibit discrimination in employment on the basis of age. Although Missouri subsequently amended its employment discrimination statute to forbid age discrimination, the amended statute did not become effective until August 13, 1986, nearly two years after the alleged unlawful act. *See* Mo.Ann.Stat. § 213.055 (Vernon 1986). Thus, because Missouri did not have a law "prohibiting discrimination in employment because of age" when the alleged unlawful practice occurred, plaintiff was unable to pursue his grievance in a state proceeding. *See Oscar Mayer & Co. v. Evans*, 99 S.Ct. at 2071. Therefore, plaintiff was required to file his charge within 180 days of the

alleged unlawful act, not within the 300 day period allowed by § 633(b).

Plaintiff nonetheless argues that he should receive the benefit of the 300 day period because according to *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 107 S.Ct. 2022, 2025, 95 L.Ed.2d 582 (1987), "federal cases should be decided in accordance with the law existing at the time of decision."

In *St. Francis College*, plaintiff's claim when filed was subject to a "well-established" six year statute of limitations period. After the claim was filed, the Supreme Court issued a decision which has the effect of decreasing the limitations period to two years. The court in *St. Francis College* stated that it would be "manifestly inequitable" to apply retroactively its decision decreasing the limitations period and thereby bar plaintiff's claim. *Id.* at 2025-26.

Nothing in *St. Francis College* suggests that the amendment to Missouri's employment discrimination statute should be retroactively applied to *increase* the limitations period for filing a charge with the EEOC. Therefore, pursuant to 29 U.S.C. § 626(d)(1), plaintiff was required to file his charge with the EEOC within 180 days after September 7, 1984, i.e., on or before March 7, 1985. Because the charge was not filed with the EEOC until May 2, 1985, the charge was not timely filed.

■ Plaintiff argues that the 180 day limitations period was tolled because of equitable tolling and equitable estoppel. Plaintiff contends that he delayed filing his charge with the EEOC for two reasons: 1) because there were no postings of employees' rights under the ADEA at Farmland, plaintiff did not know of the time limitations and filing requirements; and 2) because Farmland made misleading statements about its intent to rehire him.

The 180 day limitations period applicable to filing discrimination claims with the EEOC is not a jurisdictional prerequisite to filing suit in federal court. Therefore, it is subject to waiver, estoppel and equitable tolling. *Zipes v. Trans World Airlines*,

455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (Title VII); *Kriegesmann v. Barry-Wehmiller Co.*, 739 F.2d 357 (8th Cir.), *cert. denied*, 469 U.S. 1036, 102 S.Ct. 512, 83 L.Ed.2d 402 (1988) (ADEA). "Equitable tolling focuses on the plaintiff's excusable ignorance of the employer's discriminatory act. Equitable estoppel, in contrast, examines the defendant's conduct and the extent to which the plaintiff has been induced to refrain from exercising his rights." *Felty v. Graves-Humphreys Co.*, 785 F.2d 516, 519 (4th Cir.1986). Despite this distinction, however, courts have used the terms equitable tolling and equitable estoppel interchangeably.

In *Price v. Litton Business Systems, Inc.*, 694 F.2d 963, 964 (4th Cir.1982), plaintiff was told by his employer after his discharge that " 'other opportunities [within the company] ... would be investigated for him.' " Plaintiff was informed by letter that his supervisors wanted him to stay with the company, and during the few weeks ahead would " 'contact [him] with some concrete offers for [his] consideration.' " *Id.* at 964–65. Shortly thereafter, plaintiff received another letter informing him that the company " 'was making every effort to find another opportunity in the [company] which would be acceptable to [him].' " *Id.* at 965. This was followed by another letter setting forth three possible opportunities for plaintiff's consideration. Almost two months later plaintiff received still another letter detailing more job prospects. *Id.*

Plaintiff filed his ADEA claim with the EEOC over 180 days from the date of the alleged unlawful discharge. The district court granted the employer's motion for summary judgment on the basis that plaintiff's claim was not timely filed. Plaintiff argued on appeal that his employer should be equitably estopped from using the statute of limitations defense because of the steps taken by the employer to mitigate the effects of its decision to remove plaintiff from the position. The court rejected plaintiff's argument:

> We have recently held as a matter of law, however, that the attempt to mitigate the harshness of a decision termi-nating an employee, without more, cannot give rise to an equitable estoppel. The statute of limitations will not be tolled on the basis of equitable estoppel unless the employee's failure to file in timely fashion is the consequence either of a deliberate design by the employer or the actions that the employer should unmistakably have understood would cause the employee to delay filing his charge. *An employee's hope for rehire, transfer, promotion, or a continuing employment relationship—which is all that [plaintiff] asserts here—cannot toll the statute absent some employer conduct likely to mislead an employee into sleeping on his rights.*

*Id.* at 965–66 (citations and footnote omitted) (emphasis added). Therefore, the court concluded that because the "undisputed facts disclosed on the summary judgment record reveal that as a matter of law equitable estoppel could not apply," the court affirmed the entry of summary judgment for the employer due to plaintiff's untimely EEOC filing. *Id.* at 966.

In *Kriegesmann v. Barry-Wehmiller Co.*, 739 F.2d 357, 358 (8th Cir.), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984), defendant employer moved for summary judgment on plaintiff's ADEA claim because plaintiff had not filed his charge with the EEOC within 180 days after the alleged discriminatory act. The district court granted the employer's motion and dismissed plaintiff's claim. On appeal, plaintiff argued that the employer's actions justified tolling the 180 day period. Specifically, plaintiff pointed to the employer's promise to assist plaintiff in finding new employment and to the employer's provision of severance benefits which, according to plaintiff, would have been cut off had he filed a timely charge. *Id.*

Relying on *Price v. Litton Business Systems, Inc.*, the Eighth Circuit Court of Appeals rejected plaintiff's arguments:

> The employer's actions asserted in the present case—the provision of severance benefits and job referrals—were not likely to mislead appellant into sleeping on his rights. The undisputed facts reveal

no deliberate conduct on the part of the employer to lull appellant into delaying the filing of his ADEA charge.

*Id.* at 359.

In *Wilson v. Westinghouse Electric Corp.*, 838 F.2d 286 (8th Cir.1988), the district court granted summary judgment to the employer on plaintiff's ADEA claim because plaintiff had failed to file his EEOC charge within the 180 day limitations period. Among several arguments advanced on appeal, plaintiff contended that the 180 day period was tolled because his employer lulled him into a false sense of security after his termination by consistently promising him a new position within the company. *Id.* at 288.

Relying on *Kriegesmann,* the Court of Appeals rejected this argument: "The attempts of [plaintiff's] supervisors to locate a new position for [plaintiff] within the company do not, without more, establish the requisite conditions for equitable tolling." *Id.* Accordingly, the court affirmed the district court's dismissal of plaintiff's age discrimination claim.

In this case, plaintiff alleges he was discharged on September 7, 1984. Plaintiff states by affidavit that in October 1984, John Modlin, Executive Director for Personnel at Farmland, told him that plaintiff's education and experience would make him a "good fit" for one of Farmland's new divisions. In November, plaintiff learned that the position in the new division had been given to someone else. In the latter part of December 1984, Harry Cleburg, President of Far–Mar–Co, told plaintiff that he had "excellent education and practical background experience" and promised that "several employment opportunities would be coming up [with Farmland] in February or March 1985," including positions as a manager, general manager and statistician. In February, plaintiff learned from Cleburg that those positions were no longer available. Plaintiff did not file his charge with the EEOC until May 2, 1985. Plaintiff states that because he "relied on [Farmland's] constant assurances" of reemployment, he withheld filing a charge with the EEOC through March 1985.

Assurances by Farmland "to locate a new position for [plaintiff] within the company do not without more establish the requisite conditions for tolling." *See Wilson,* 838 F.2d at 288. Plaintiff has not presented any evidence that what he was told by Farmland or Far–Mar–Co was intended to lull plaintiff into delaying the filing of his ADEA charge. Absent conduct likely to mislead plaintiff into sleeping on his rights, plaintiff's "hope for rehire" cannot toll the statute. *See Price v. Litton Business Systems,* 694 F.2d at 965–66; *see also Mayor v. Western Electric Co., Inc.,* 487 F.Supp. 84, 87 (W.D.Mo.1980) (employer's statements to discharged plaintiffs that they would receive "first consideration" for recall insufficient to toll statute).

In his affidavit plaintiff also states that "to my knowledge there was no posting of an employee's rights under the [ADEA] at KCT or Farmland, and at no time did I have any knowledge of the actual time limitations or filing requirements under this law." Farmland by affidavit states that the required EEOC notices had been posted in conspicuous places at Farmland since at least 1984. Plaintiff disputes defendant's proper presentation of the fact that the required notices were posted by stating that he did not know whether the notices were posted properly. On this record, plaintiff's asserted lack of knowledge about posting does not refute defendant's properly presented assertion that the notices were posted. *See Brudne v. Amalgamated Trust and Savings Bank,* 627 F.Supp. 458, 464–65 (N.D.Ill.1986).

Therefore, neither equitable estoppel nor equitable tolling apply to plaintiff's EEOC charge filed on May 2, 1985. Accordingly, Farmland's motion for summary judgment on the discharge claim will be granted because the May 2, 1985, charge was not timely filed.

B. *July 1985 Retaliation Claim Based on Refusal to Hire*

■ In paragraph 14 of the complaint plaintiff alleges that following his discharge from Farmland on September 7, 1984, plaintiff applied for another position at Farmland; that at the time of his appli-

cation plaintiff had filed his initial charge of discrimination with the EEOC; that plaintiff was told by letter dated June 24, 1985, that a hiring decision would be made by July 1, 1985; and that plaintiff was denied the position for which he applied.

Farmland argues that the claim in paragraph 14 should be dismissed because it was not alleged in either the initial May 2, 1985, EEOC charge or in the July 17, 1986, retaliation charge. Furthermore, according to Farmland, even if the claim in paragraph 14 had been alleged in the EEOC charges, it was a separate and distinct violation requiring the filing of a separate charge.

Plaintiff contends that the July 1985, failure to hire claim is part of a continuing violation and can be "litigated as arising out of the original charge [May 2, 1985]— even if no separate retaliation charge has been filed. *See, e.g., Oubichon v. North American Rockwell Corporation*, 482 F.2d 569 (9th Cir.1973)."

Because I have previously concluded that the May 2, 1985, EEOC charge complaining about something that happened on either August 22, 1984, or September 7, 1984, was not timely filed, I will only consider the EEOC charge filed on July 17, 1986. In that charge plaintiff alleged that in January 1986, Farmland retaliated against him for filing the initial charge by pressuring his employer to fire him. Neither that charge nor the subsequent amended charge filed on August 15, 1986, allege that Farmland discriminatorily refused to hire plaintiff in July 1985. Furthermore, the alleged refusal to hire plaintiff in July 1985 occurred more than 180 days and more than 300 days before July 17, 1986.

Plaintiff attempts to overcome these problems by asserting that the July 1985 refusal to hire plaintiff was part of a continuing pattern of discrimination. Although some events falling outside the limitations period may be included properly in an EEOC charge, facts sufficient to establish a pattern of ongoing discrimination must be alleged and some EEOC charge referring to the untimely act must be filed.

*Scott v. St. Paul Postal Service*, 720 F.2d 524, 525 (8th Cir.1983).

Plaintiff's attempt to utilize the continuing violations doctrine fails because plaintiff did not refer to the alleged failure to hire in July 1985 in the July 17, 1986, charge filed with the EEOC or in the August 15, 1986, amendment to that charge.

Even if plaintiff had included the July 1985 failure to hire claim in his July 1986 or August 1986 EEOC charge, plaintiff has failed to present sufficient facts, if believed, to establish a pattern of ongoing discrimination. Based on the record presented, the July 1985 failure to hire is a discreet, isolated and complete allegedly discriminatory event.

Generally, to demonstrate a continuing violation, a plaintiff must show a "series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period." *Valentino v. United States Postal Service*, 674 F.2d 56, 65 (D.C.Cir.1982).

The Fifth Circuit has developed a more detailed and often cited three-factor test to determine whether alleged discriminatory acts constitute a continuing violation or individual violations:

The first [factor] is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in continuing violation? The second is frequency. Are the alleged acts recurring (e.g. a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor ... is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequence of the act is to be expected without being dependent on a continuing intent to discriminate?

*Berry v. Board of Sup'rs of L.S.U.*, 715 F.2d 971, 981 (5th Cir.1983).

Under the first prong of the *Berry* test, plaintiff's failure to hire claim is not the

same type of discrimination as the alleged discriminatory pressure to terminate plaintiff in January 1986 followed by his termination in July 1986. Applying the second *Berry* factor, the three acts in question, i.e., failure to hire in July 1985, pressure to terminate in January 1986 and termination in July 1986 are widely separated in time and different in their nature. Therefore, they are more in the nature of isolated employment decisions than parts of a pattern of discrimination. These dissimilar types of discrimination do not tend to connect in a continuing violation.

> The plaintiff may not argue that dissimilar acts are part of a pattern of discrimination. To hold otherwise would allow an individual plaintiff, with any discrete timely claim of discrimination, to raise any other unrelated acts which occurred during the tenure of his employment. This would nullify the policy against 'stale claims' which finds voice in the statute of limitations.

*Evans v. Chesapeake & Potomac Tel. Co. of Maryland,* 518 F.Supp. 1074, 1078 (D.Md.1981).

Finally, applying the third *Berry* factor, a refusal to hire is a permanent, finite, noteworthy event that should have triggered the plaintiff's awareness of a possible violation of his rights. There was no subtle employer action here that might escape an employee's notice. Also, plaintiff was sensitized to problems because he had filed an EEOC charge only two months before.

Furthermore, the Eighth Circuit has stated that the "rationale underlying the allowance of actions for continuing discrimination is to provide a remedy for past actions which operate to discriminate against the complainant *at the present time....* While the continuing discrimination theory may be available to present employees, ... we do not think this theory has validity when asserted by a former employee." (Emphasis added.) *Olson v. Rembrandt Printing Co.,* 511 F.2d 1228, 1234 (8th Cir. 1975). Plaintiff is both a former employee and the act he complains about is a failure to hire. Plaintiff just does not fit the profile of the type of plaintiff intended to benefit from the continuing violation theory.

Thus, plaintiff's claim that he was discriminatorily refused a job in July 1985 is not part of a continuing violation. Plaintiff, therefore, is not entitled to circumvent the limitations period. *See Drayton v. Veterans Administration,* 654 F.Supp. 558, 567 (S.D.N.Y.1987). Accordingly, Farmland's motion to dismiss plaintiff's claim for the alleged unlawful July 1985 failure to hire will be granted.

### C. *January 1986 Retaliation Claim*

■ In paragraphs 15 and 16 of the complaint, plaintiff asserts a claim against Farmland for retaliation. Specifically, plaintiff alleges that in July 1985, he obtained employment with the Double Circle Coop (Coop) in Waco, Texas; that on January 7, 1986, he was made a "permanent employee" of the Coop; that the Coop had been financed with "sizeable loans" from Farmland; that during a January 1986, meeting between Farmland and the Coop, Farmland stated that the "only condition on which [it] would agree to refinance or continue financing would be if the [Coop] fired plaintiff;" and that plaintiff was fired on July 30, 1986.

Farmland argues that these allegations should be dismissed because they are based on an EEOC charge which was not timely filed. Even if Farmland had tried to pressure the Coop into firing plaintiff, Farmland contends that the meeting referred to by plaintiff occurred on January 11, 1986. Because plaintiff's retaliation charge was not filed until July 17, 1986, Farmland concludes that this claim for retaliation is untimely.

The critical date for determining when the statute of limitations period begins to run is not when the alleged unlawful act occurred but when the plaintiff learned of it. *O'Connell v. Champion International Corp.,* 812 F.2d 393, 394 (8th Cir.1987) citing *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). Furthermore, as the moving party, Farmland bears the initial burden of demonstrating that plaintiff learned of the

alleged act of retaliation on January 11, 1986, or some other date more than 180 days before plaintiff filed his charge.

On January 11, 1986, representatives of Farmland, the Cooperative Finance Association, Inc. (CFA) and the Coop held a meeting in Waco, Texas. CFA is a wholly owned Farmland subsidiary which had made loans to the Coop. Plaintiff attended the meeting as manager of the Coop.

Farmland has established by affidavit that during the meeting, CFA informed the Coop leadership that CFA "would not be agreeable to continue financing the [C]oop with the existing management control system in place because the [C]oop had not complied with the management advisory agreement, a condition of CFA's loan to the [C]oop." Affidavit of Doyle Smith at ¶ 7.

Although plaintiff attended the meeting where this statement was allegedly made, I cannot thereby conclude that plaintiff learned at that meeting that he would be fired. CFA's statement at the January 11 meeting may have been cryptic enough that plaintiff would not have realized that it meant he would be fired.

Furthermore, plaintiff raises genuine issues of material fact when he states by affidavit: "As I recall, it was somewhere around January 22 1986, as stated in my [July] 17, 1986 EEOC filing, that I learned from the president of the [Double Circle] Coop that Farmland Industries had insisted that unless I was fired, Farmland Industries would no longer finance the Double Circle Coop." Affidavit of Herbert Caudill at ¶ 39.

Thus, based on the affidavits submitted, I cannot conclude that plaintiff learned on January 11, 1986, that he would be fired. Therefore, Farmland's motion for summary judgment on plaintiff's retaliation claim will be denied.

### D. *Whether Plaintiff Was a Farmland Employee*

■ Farmland also argues that because plaintiff was not a Farmland "employee" when he was terminated by Double Circle Coop on July 30, 1986, he may not sue Farmland for retaliation under the ADEA.

In *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139 (6th Cir.1977), David Bellian, a former employee of defendant, applied for employment with a new company and was told that his application was "promising." When the new company called Bellian back for a second interview, it told him that defendant had told it about Bellian's previously filed charge with the Department of Labor. Bellian attempted to explain that defendant had misrepresented the facts of both the incident and the charge. The new company nonetheless refused to hire him. *Id.* at 141.

Bellian got in touch with the Department of Labor which filed a complaint under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201, *et seq.* alleging that defendant discriminated against him by reporting and disclosing to a prospective employer information causing that employer to refuse to hire him. Defendant moved to dismiss arguing that a "former employee" could not claim protection afforded "employees" by the FLSA. The district court agreed and entered summary judgment for defendant. 548 F.2d at 141.

Rejecting the "narrow reading" of the term "employee" urged by the defendant, the Sixth Circuit Court of Appeals reversed. The court concluded that under the FLSA the term "employee" had been given a broad definition by Congress and that courts construing the FLSA's provisions do so liberally "to effectuate the broad policies and intentions of Congress." *Id.* at 143–44. Further,

the alleged discrimination by [the former employer] against its former employee ... is precisely the sort of "mischief" that [the retaliation provisions] of the Fair Labor Standards Act was intended to correct. To read the act as excluding employees voluntarily separated from their work from the protections of [the retaliation provisions] would create an anomaly with the tenor of Congressional intent or judicial interpretation of this Act or of similar social legislation.

*Id.* at 147 (footnote omitted).

The reasoning in *Dunlop v. Carriage Carpet Co.* has been applied in cases

brought by employees against their former employers for retaliation under Title VII. *See, e.g., Pantchenko v. C.B. Dolge Co.,* 581 F.2d 1052, 1055 (2d Cir.1978) (per curiam); *Rutherford v. American Bank of Commerce,* 565 F.2d 1162, 1165–66 (10th Cir.1977). *But see Bailey v. USX Corp.,* 658 F.Supp. 279 (N.D.Ala.1987) (declining to follow *Dunlop, Pantchenko* and *Rutherford* ).

Additionally, in *EEOC v. Cosmair Inc. L'Oreal Hair Care Division,* 821 F.2d 1085, 1088–89 (5th Cir.1987), the court stated:

> The ADEA protects from retaliation "employees or applicants for employment." 29 U.S.C. § 623(d). Employee means "an individual employed by any employer." *Id.* § 630(f). Cosmair contends that because Terry had already been terminated when he signed the release, and so was no longer employed, he was not protected from retaliation. The term "employee," however, is interpreted broadly: it includes a former employee as long as the alleged discrimination is related to or arises out of the employment relationship. *Pantchenko v. C.B. Dolge Co.,* 581 F.2d 1052, 1055 (2d Cir. 1978) (per curiam); *Rutherford v. American Bank of Commerce,* 565 F.2d 1162, 1165–66 (10th Cir.1977); *Dunlop v. Carriage Carpet Co.,* 548 F.2d 139, 147 (6th Cir.1977); *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.,* 459 F.2d 303, 306 (5th Cir.1972).

Accordingly, because the alleged retaliatory action arose out of plaintiff's former employment by Farmland, Farmland may be sued under ADEA even though plaintiff was an employee of Double Circle Coop at the time Farmland allegedly retaliated against him. Therefore, defendant's motion for summary judgment on this ground will be denied.

#### E. *The 60 Day Waiting Period*

▉ Plaintiff filed his charge with the EEOC alleging retaliation on July 17, 1986. An amended charge was filed on August 15, 1986. The complaint in this action was filed August 22, 1986. Farmland argues that because § 626(d) of the ADEA pro-vides that "no civil action may be commenced by an individual under this section until 60 days after a charge" has been filed with the EEOC and because "this 60 day waiting period is a jurisdictional prerequisite to suit," plaintiff's claim for retaliation should be dismissed.

In *Wilson v. Westinghouse Electric Corp.,* 838 F.2d at 289–91, plaintiff filed his initial charge on June 28, 1983. On March 23, 1984, plaintiff filed a second charge. On April 30, 1984, plaintiff filed his original complaint in federal district court. The district court dismissed the claim arising out of the second charge because plaintiff filed the complaint less than 60 days after he filed the second charge. On appeal, plaintiff argued that he cured the jurisdictional defect by filing a supplemental complaint after the required 60 days had elapsed. The Eighth Circuit Court of Appeals stated:

> While the District Court was clearly unable to exercise jurisdiction over Wilson's rehire claim upon the filing of his original complaint, the expiration of the 60–day waiting period was exactly the kind of event occurring after filing that Wilson should have been allowed to set forth in a supplementary pleading under Fed. R.Civ.P. 15(d). Even when the District Court lacks jurisdiction over a claim at the time of its original filing, a supplemental complaint may cure the defect by alleging the subsequent fact which eliminates the jurisdictional bar.
>
> .   .   .   .   .
>
> We are mindful of defendant's contention that the purpose of the 60–day waiting period is to give Westinghouse and the EEOC a chance to settle the charge by conciliation. In theory, an atmosphere conducive to conciliation, is spoiled by the filing of a lawsuit. The pendency of a complaint, however, especially one clearly premature on its face, would not stop a defendant who really wanted to settle from doing so. If some reduction in the likelihood of settlement occurred, we think it more fair to tolerate this reduction, rather than extinguishing a possibly meritorious claim on the basis of a tech-

nical defect which has been cured by the mere lapse of time.

*Id.* at 290–91 (citations omitted).

Here, even though plaintiff filed his complaint alleging retaliation before 60 days had elapsed since filing his EEOC charge, plaintiff's claim for retaliation will not be dismissed for lack of subject matter jurisdiction. Instead, plaintiff will be allowed to cure this jurisdictional defect by seeking leave to file a supplemental pleading pursuant to Rule 15(d), Federal Rules of Civil Procedure, alleging "the jurisdictional fact which eliminates the jurisdictional bar." *See Wilson,* 838 F.2d at 290.

### Conclusion

For the reasons stated, it is hereby ORDERED that:

1) defendant's motion for summary judgment on plaintiff's claim for discriminatory discharge on September 7, 1984, is granted;

2) defendant's motion for summary judgment on plaintiff's claim for retaliation based on defendant's refusal to hire him in July 1985, is granted;

3) defendant's motion for summary judgment on plaintiff's claims for retaliation based on his threatened discharge from the Coop in January 1986 and on his discharge from the Coop on July 30, 1986, is denied; and

4) within 20 days from the date of this order, plaintiff may seek leave to file a supplemental complaint pursuant to Rule 15(d), Federal Rules of Civil Procedure, alleging the jurisdictional facts which satisfy the ADEA's 60 day waiting period.